IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




 NOS. 1729-03, 1730-03, 1731-03




MAURICE JABARR CHARLES, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY





 Cochran, J., delivered the opinion of the Court, joined by Meyers,
Price, Womack, Johnson and Holcomb, JJ. Keller, P.J., Keasler and Hervey,
JJ., concurred in the result.


O P I N I O N 



 In this case we hold that an appellate court, in its review of a trial court's ruling on a
motion for new trial: 1) should apply a deferential standard of review to the trial court's
resolution of historical facts; and 2) may rely upon implied findings of fact that are supported
by the record to uphold the trial court's ruling, even when the trial court is not faced with
expressly conflicting affidavits or testimony. (1) We therefore affirm the Fourteenth Court of
Appeals, which had held the same. (2)

I.


 Appellant, a fourteen-year-old boy, was certified as an adult to stand trial in district
court. He pleaded guilty before a jury to three offenses-attempted burglary, aggravated
kidnapping, and aggravated robbery-stemming from two separate criminal episodes. 

 The first episode involved an attempted burglary of the home of the grandmother of one
of appellant's friends. Appellant and another boy were seen leaving the area after dropping a
crowbar and claw hammer into a neighbor's trash can. The grandmother came home to find
the burglar bars on her patio door pried open and the door lock broken. She called the police,
and officers soon returned with appellant and the other boy in tow. She confronted appellant,
who was sitting in the police car, and said "How could you do this? You've been in my house. 
Why did you do it?" Appellant told her that "he could have taken something if he had want[ed]
it because he had been in my house."

 The second, more serious, episode occurred two months later. Appellant and several
friends, all wearing ski masks and carrying guns, drove into a park at night and accosted a young
woman and her boyfriend. They robbed the boyfriend, kicked him, ordered him to take off his
shorts, threatened to shoot him if he moved, and stole his car. They made the young woman
get into the trunk of her car and then drove off with her in it. The kidnappers eventually stopped
and opened the car trunk. Appellant held a pistol and demanded that the young woman give
them her jewelry. She refused, but appellant hit her on the head with his fist. She gave them
her jewelry. Appellant took her ring, pulled her out of the trunk by her hair, and threw her on
the ground. According to the victim, both appellant and one of his friends raped her. They
threw her back in the trunk when her car alarm suddenly went off. Fortuitously, a police officer
was driving by; he saw them and gave chase. After a high-speed car chase, the kidnappers
finally stopped in a field and fled on foot. The police officer rescued the young woman, who
became pregnant as a result of the rape. Appellant was taken into custody a few days later after
the ring that he had taken from the victim was recovered. After being given his statutory
juvenile warnings from a magistrate, appellant hand-wrote a three-page statement. He admitted
that he had participated in the robbery-kidnapping, but he denied committing any rape and
minimized his involvement.

 During the defense punishment case-in-chief, appellant testified to his remorsefulness
and potential for rehabilitation. Then he called twelve other witnesses on his behalf. The jury
sentenced him to fifteen years in prison for the aggravated robbery, forty years for the
aggravated kidnapping, and a suspended three-year sentence for the attempted burglary. Appellant filed a written motion for new trial. He asserted ineffective assistance by his
trial counsel and alleged that his attorney did not conduct any independent investigation into
the voluntariness of his confession. Appellant claimed that if there were a chance he could
have suppressed his written statement, he would not have pleaded guilty. 

 Appellant specifically requested, in italics, that the hearing on the motion for new trial
be conducted by affidavits. The trial judge signed appellant's presentment order, and, in
conformity with appellant's explicit request, conducted the hearing by affidavits. (3) The trial
judge denied the motion for new trial.

 The court of appeals held that appellant failed to show that the trial court erred in
overruling his motion for new trial. 

II.


 Appellant argues that Texas Rule of Appellate Procedure 21.8(b), (4) which forbids a trial
judge from summarizing or commenting on the evidence when he rules on a motion for new
trial, allowed the court of appeals to create an "irrebuttable presumption" that the trial court
disbelieved appellant's affidavits. According to appellant, if the trial court had believed his
affidavits, then it should have granted him a new trial based on his claim of ineffective
assistance of counsel. He concludes that the court of appeals erred in presuming that the trial
may have disbelieved his affidavits because appellant cannot require (or even request) a trial
court to make explicit findings of fact in denying a motion for new trial. He argues that
because the State did not offer contradicting affidavits, appellant's affidavits should be taken
as true and they, therefore, establish his claim to ineffective assistance of counsel and,
consequently, his entitlement to a new trial. We disagree.

 We address appellant's second ground, concerning the appropriate appellate standard
of review, before his first ground, concerning appellate court reliance upon implied factual
findings, because the standard of review determines the deference due to factual conclusions
which may be inferred from the record but which are not express.

A. The court of appeals correctly applied a deferential standard of review to the
trial court's resolution of historical facts based upon affidavit evidence.


 An appellate court reviews a trial court's denial of a motion for new trial under the
"abuse of discretion" standard. (5) We do not substitute our judgment for that of the trial court,
but rather we decide whether the trial court's decision was arbitrary or unreasonable. (6) We must
view the evidence in the light most favorable to the trial court's ruling and presume that all
reasonable factual findings that could have been made against the losing party were made
against that losing party. (7) Thus, a trial court abuses its discretion in denying a motion for new
trial only when no reasonable view of the record could support the trial court's ruling.

 Appellant argues that his affidavits were "uncontradicted" by any evidence offered by
the State. Therefore, they establish that his trial counsel advised appellant to plead guilty
because he assumed that appellant's written statement was admissible; thus, he did not conduct
any independent investigation concerning its voluntariness. (8) Appellant asserts that this Court's
decision in Manzi v. State (9)-in which we held that a deferential review applies to a trial court's
determination of historical facts even when that determination is based solely on affidavits-is
inapplicable because Manzi involved conflicting affidavits, but in this case the only affidavits
submitted were those by the defense and they contained only "uncontradicted" facts. 

 Both the State and appellant spend considerable time debating whether there are
contradictions in or conflicts between the six different affidavits. (10) Regardless of whether
appellant's various affidavits overtly conflict or contain internal inconsistencies, the fact
remains that they do contain numerous ambiguities, vague references, and conclusory
statements. (11) This is an inherent problem with appellant's affidavits-with witnesses on the
witness stand, such ambiguities may be cleared up by follow-up questions, pressing for the
factual basis of a conclusion, and by cross-examination. 

 Affidavits like those submitted by appellant are widely and appropriately used in
criminal and civil proceedings to determine if there are material disputed facts and to define
exactly which facts are disputed. (12) They are not always well-suited for resolving disputed
facts. (13) This is especially a problem when only one party is in possession of most of the
salient facts. 

 With claims of ineffective assistance of counsel like appellant's, the persons with the
most, if not exclusive, knowledge of the salient historical facts will normally be the defendant
and his former attorney. By the time an ineffective-assistance claim reaches the courtroom,
the attorney and his former client may have conflicting memories and positions, but
sometimes they are aligned. In the latter situation, it is particularly important that those
memories and positions are tested in the crucible of cross-examination. The Texas Rules of
Civil Procedure state that affidavits from an interested party may establish a fact for summary-judgment purposes only if that evidence is "clear, positive and direct, otherwise credible, and
free from contradictions and inconsistencies, and could have been readily controverted." (14) 
The phrase "could have been readily controverted" means "the testimony at issue is of a nature
which can be effectively countered by opposing evidence." (15) Statements in affidavits of
interested witnesses concerning their own state of mind are "uncontrovertible" because "the
mental workings of an individual's mind are matters about which adversaries have no knowledge
or ready means of confirming or controverting." (16)
 A trial judge has discretion to discount
factual assertions in an affidavit by an interested party that do not meet this test. And an
appellate court, in its review, must defer to the trial court's ruling to the extent that any
reasonable view of the record evidence will support that ruling.

 Thus, we agree with the court of appeals that, in the context of the denial of a motion
for new trial, "[a] deferential rather than de novo standard applies to our review of a trial court's
determination of historical facts when that determination is based, as here, solely upon
affidavits" (17) regardless of whether the affidavits are controverted. We overrule appellant's
second ground for review.

B. The court of appeals did not err in relying upon implied factual findings to
uphold the trial court's denial of appellant's motion for new trial.


 Appellant also disagrees that the court of appeals is entitled to distill implied factual
findings from his affidavits that would support a denial of his motion for new trial. Appellant
complains that Rule 21.8(b) of the Texas Rules of Appellate Procedure precludes him from
rebutting the court of appeals' "presumption" that the trial court made implicit fact findings
that support its ruling denying his motion for new trial. He is correct in his premise- Rule
21.8(b) does prohibit the trial judge from making any express factual findings in ruling on a
motion for new trial-but wrong in his conclusion that the court of appeal erred in relying upon
implicit factual findings to uphold the trial court's ruling. 

 In Texas, the trial judge is explicitly prohibited by Rule 21.8(b) from making any
comment on the evidence in ruling on a motion for new trial. This prohibition has been a part
of Texas statutory law since at least 1880. (18) Thus, appellate courts must defer to any reasonable
implied factual findings that the trial court might have made in denying a motion for new trial. (19) 

 In this case, appellant takes great umbrage with the court of appeals' "presumption" that
the trial court simply may not have believed appellant's affidavits. He quotes from the lower
court's opinion:

 Because the only evidence produced by appellant in support of his motion for
new trial were affidavits and written records, some of which contained
conflicting testimony, the trial court was within its right to disbelieve the
assertions upon which appellant's claims of ineffective assistance of counsel are
based. This is particularly true if a witness chooses not to testify live at the
motion for new trial hearing. Indeed a witness' unwillingness to support an
affidavit with live testimony could itself be considered evidence that the
affidavit is untrue. In this case, not a single affiant testified on behalf of
appellant. (20)


The court of appeals cited and relied upon this Court's reasoning in Kober v. State, (21) in which
we stated that "a witness' unwillingness to support an affidavit with live testimony could itself
be considered evidence that the affidavit is untrue." (22) 

 Appellant contends that the court of appeals' reasoning is premised on a clear factual
error: he states that the trial court ordered that the hearing be conducted by affidavits and
implies that he was prevented from presenting live testimony by the trial judge's policy "and
the policy of virtually every criminal district judge in Harris County." That is not, however,
what the present record reflects. It was appellant, not the trial judge, who expressly requested
a hearing by affidavits in his "Order Presenting Motion for New Trial." (23) Appellant wrote the
order; the trial judge simply signed it. (24) Furthermore, at the hearing on the motion for new
trial, appellant did not offer any live witnesses or testimony. He did not object to proceeding
on affidavits. Having received precisely what he requested, appellant is estopped from
complaining that the court of appeals "presumed" that the trial court could have disbelieved
appellant's affidavits because he was unwilling to have their testimony tested in the crucible
of cross-examination. (25)

 He who asks for a hearing by affidavit rather than by live testimony has a hard row to
hoe in establishing that a trial judge abused his discretion in failing to credit conclusory
assertions contained in his affidavits. And he who composes the affidavits must ensure that
they contain sufficient specific concrete facts that are free from any ambiguity, uncertainty,
or inconsistency as to clearly establish entitlement to relief. Of course, the trial judge is not
required to believe those factual statements, even when they are uncontradicted by other
affidavits. (26) Just as a jury may "believe all, some, or none of the testimony," (27) so may a trial
judge believe all, some, or none of an affidavit, even though it may be difficult (if not
impossible) to assess an affiant's credibility solely from the cold, hard page. 

 We hold that, because the trial judge is prohibited from commenting on the evidence
in ruling on a motion for new trial, reviewing courts may impute implicit factual findings that
support the trial judge's ultimate ruling on that motion when such implicit factual findings are
both reasonable and supported in the record. We uphold the court of appeals' method of
analysis and its implicit factual findings in this case. Here, the trial judge could have
reasonably disbelieved some or all of the affiants' statements, found them inconclusive,
contradictory, internally inconsistent, or ambiguous. Or, as stated by the court of appeals, the
trial judge may have viewed the affidavits with skepticism because they were not supported by
any offer of live testimony. 

 We therefore overrule appellant's first ground for review and affirm the judgment of
the court of appeals.

Cochran, J.

Delivered: October 6, 2004

Publish 
1. We granted appellant's three grounds for review:

1. The court of appeals erred in relying on a presumption that the trial court disbelieved
appellant's affidavits introduced at the hearing on his motion for new trial because appellant is
precluded from rebutting this presumption pursuant to Tex. R. App. P. 21.8(b).

2. The court of appeals erred in holding that a deferential standard of review applies to the trial
court's resolution of historical facts even where, as here, they are not based on conflicting
affidavits.

3 The court of appeals erred in holding that counsel's advice to appellant to plead guilty because
there was no viable legal challenge to appellant's confession was objectively reasonable
because it was informed by his objectively unreasonable decision to forego any investigation
whatsoever into the facts and circumstances.

Because we reject appellant's first two grounds and the third ground depends upon a favorable finding
on at least one of the first two issues, we dismiss appellant's last ground for review as improvidently
granted.
2. Maurice Jabarr Charles v. State, Nos. 14-01-1247-CR - 14-01-1249-CR 2003 Tex.
App. LEXIS 5639 (Tex. App. - Houston [14th Dist.] July 3, 2003) (not designated for publication).
3. The prosecutor, over appellant's objection, testified very briefly.
4. Tex. R. App. P. 21.8(b) ("In ruling on a motion for new trial, the court must not summarize,
discuss, or comment on evidence").
5. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).
6. Id. 
7. See, e.g., Quinn v. State, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997) (in reviewing
denial of motion for new trial, appellate court must "view the evidence in the light most favorable to the
trial court's findings (or ruling, if there are no pertinent findings)"); Loserth v. State, 963 S.W.2d 770,
774 (Tex. Crim. App. 1998) ("[w]hen the trial court does not make express findings of historical facts,
the facts are viewed in a light favorable to the court's ruling"); Beck v. State, 573 S.W.2d 786, 791
(Tex. Crim. App. 1978) (noting that, at a motion for new trial hearing, the trial judge has "the right to
accept or reject any part of" a witness's testimony).
8. In the court of appeals, appellant argued that his statement was involuntary because of "his
intoxication, fatigue, youth and intellect, promises by the police, and various 'other factors.'" Charles,
slip op. at 7. 
9. 88 S.W.3d 240, 244 (Tex. Crim. App. 2002).
10. For example, the State notes that trial counsel's affidavit states that he failed to object to an
incorrect parole law charge in the jury instructions. In fact, however, the charge was correct. 
Appellant's current counsel states that he drafted trial counsel's affidavit and this factual mistake was an
"inadvertent error" and an "oversight" on his part. Nonetheless, that kind of factual error in a sworn
statement might not inspire confidence in the accuracy of other factual statements contained in affidavits
composed by one person and signed by another. The State also points to the magistrate's typed
affidavit, which she modified by hand before signing so that it was clear that she did not ask whether
appellant was intoxicated because her "personal observations of appellant" did not prompt her to do
so. From this handwritten modification, the trial court could reasonably infer that the magistrate thought
appellant was not mentally or physically impaired, and thus she felt no need to inquire specifically about
intoxication.
11. For example, appellant's mother's affidavit states that she asked trial counsel if there were
any way to suppress appellant's confession. Trial counsel told her that he knew the magistrate, "and
that if she was satisfied that Maurice knew what he was doing, there was no way to even try to
suppress his written statement." This may or may not be ultimately correct legal advice, depending
upon the underlying circumstances and the context of the entire conversation. Trial counsel's affidavit
states that he "spoke briefly to Maurice about the facts and circumstances that surrounded his arrest. I
spoke to him briefly about the statutory warnings given to him by the magistrate, and the written
statement he ultimately gave." How briefly? What, exactly, did appellant tell his attorney during this
conversation? Did he say anything that would have, should have, put a reasonable attorney on notice to
inquire further? Without greater specificity, these affidavit statements raise more factual issues than they
resolve.

 Appellant's father's affidavit states that he was present with his son when the magistrate warned
Maurice. He asserts that "I remember that Maurice did not look or act like his usual self that night and
I believe that he was high from something, probably marihuana." In a live hearing, both sides could
develop testimony explaining whether, as he was right there and suspected such a thing, Mr. Charles
asked his son about his physical or mental condition or mentioned it to magistrate. And if not, why not.

 Appellant's affidavit states "we smoked a lot of marijuana. As a result, I was very, very high
from the late afternoon until I woke up the following morning in juvenile detention." Appellant was
sufficiently aware to remember and set out in his affidavit the exact words used by detaining police
officers: "You know what you did and you're in a lot of trouble," but he did not remember or
understand what the magistrate was telling him about legal rights. In a live hearing this discrepancy
could be explored and appellant could explain why he did not ask his father, who was standing beside
him, for assistance or tell him "I don't understand." Appellant states, in his affidavit, that when the police
officers started questioning him, he began "mumbling because I was tired, they gave me a pen and some
paper and told me just to write down what happened." He did so. Appellant's penmanship in the
written statement appears to be good, his spelling is reasonably accurate, he writes in grammatical
sentences, uses punctuation, gives a very coherent recitation of the events, and makes appropriate
corrections with his initials beside them. Based upon the face of the handwritten document itself, a 
factfinder could reasonably reject the conclusion that it was drafted by a person who was then
intoxicated and not fully in command of mental and physical faculties. But these are ambiguities that
could be best resolved by direct- and cross-examination.

 Appellant's affidavit states that: "I never saw the first page of the judge's warnings that said
what it was that I was being charged with." But the magistrate's signed written warning explicitly states: 
"Maurice Charles, you have been accused of the offense of Aggravated Robbery and Aggravated
Kidnapping, alleged to have been committed in Harris County, Texas, on the 5th day of October, 2000,
on a complaint made by Sergeant Andrew Carter." And the document then goes on to recite the
required warnings. The motion for new trial affidavit prepared for the magistrate's signature contained
the sentence, "I did not ask Maurice whether he understood the nature of the offenses with which he
was charged." This sentence was crossed out. Does this deletion mean that the magistrate did indeed
warn appellant about the nature of the offenses or merely that she did not recall one way or the other? 
This, too, is a factual ambiguity or conflict that could be resolved by live testimony and further
questions.

 This is not to say that the trial judge could not have credited all the factual assertions in
appellant's affidavits, only that he would be acting within his discretion if he did not do so.
12. See Manzi, 88 S.W.3d at 250 (Cochran, J., concurring).
13. Id.
14. Tex. R. Civ. Proc. 166a(c) (setting out standard for summary judgment proof based on
"uncontroverted testimonial evidence of an interested witness").
15. Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989).
16. Lection v. Dyll, 65 S.W.3d 696, 701 (Tex. App.-Dallas 2001, pet. ref'd) (collecting cases). 
However, if the affidavits of interested witnesses are sufficiently detailed and specific, those affidavits
may be objective proof sufficient to establish the affiant's state of mind as a matter of law. See Channel
4, KGBT v. Briggs, 759 S.W.2d 939, 942 (Tex. 1988).

17. Charles, slip op. at 4.
18. See Rains v. State, 7 Tex. App. 588, 590 (1880) (noting that then article 782 of the Code
of Criminal Procedure stated that "in granting or refusing a new trial the judge shall not sum up, discuss,
or comment upon the evidence in the case, but shall simply grant or refuse the motion without prejudice
to either the State or the defendant"). The prohibition against judicial comments on the evidence was
enacted in most of the states "in the course of a popular political movement sweeping through the
nation" during the early 1800's. 9 John Wigmore, Wigmore on Evidence § 2552 at 665-66
(Chadbourn rev. 1981). Under the early Populist view, judges were required to be neutral referees,
allowed only to set out the content of the law, never to express an opinion on the facts. This bar applied
not only to any comment to the jury or in front of the jury, but frequently even in non-jury proceedings,
such as a hearing on a motion for new trial. Texas is among the many states which have maintained
these "no comment on the evidence" statutes or rules regardless of current wisdom or context.
19. Appellant cites to the concurring opinion in State v. Ross, 32 S.W.3d 853, 859 (Tex. Crim.
App. 2000), in which Judge Womack stated:

 There is no more reason to assume that the trial court made implicit findings of fact that
support its ruling than there is to believe that the trial court made implicit conclusions of
law that support its ruling.

 It is just as possible that the resolution of the issues turned on the trial court's
understanding of the law. Indeed, it is more likely that the trial court's ruling is one of
law when the evidence was uncontradicted. ...

 In a system in which appellate courts make unjustified and incorrect assumptions to
uphold rulings, a trial judge who is more concerned about being affirmed than being
right has every incentive to make one-word rulings. I hope and believe that such judges
are few. But countless errors of law can be hidden behind unexplained rulings if we are
willing to assume that judges have rejected uncontroverted testimony, for no apparent
reason, without saying so.

Id. (Womack, J.). But Judge Womack was speaking in the context of a motion to suppress in which
findings of fact, though not statutorily required, are certainly permissible and perhaps advisable. In
ruling on a motion for new trial, however, judges are expressly forbidden from commenting on the
evidence. Thus, Judge Womack's later statement in Ross is more pertinent to this situation:

 The simple and correct resolution of this recurring problem is to say that, when the
party that is challenging a trial court's ruling fails to request findings of fact, an appellate
court will not reverse a ruling that could be reasonably based on adverse findings of
fact. If we couple this rule with a rule that the failure to make findings of fact, on
request that was timely presented and refused over objection, is an independent ground
for reversal of the trial court's judgment, we will have taken a step toward the just
resolution of these appeals-a resolution that is based on the reality of what happened
rather than on assumptions that may be entirely fictitious.

Id. at 859-60 (citations omitted). Because, under Rule 21.8(b), a trial court cannot make findings of
fact in denying a motion for new trial, a defendant who wishes to have the trial court explicitly set out his
findings concerning the historical facts pertinent to his ineffective assistance of counsel claim, should
raise that claim in a habeas corpus proceeding. Otherwise, an appellate court will not reverse a trial
court's denial of a motion for new trial "that could be reasonably based on adverse findings of fact." Id. 

20. Charles, slip op. at 7-8 (citations omitted).
21. 988 S.W.2d 230 (Tex. Crim. App. 1999).
22. Id. at 234. In Kober, unlike the present case, the affiant did appear at the motion for new
trial hearing, but expressly invoked her right against self-incrimination and refused to testify. Id. at 231. 
Here, appellant expressly requested that the hearing be conducted by affidavit and did not offer to call
the witnesses or object to a hearing by affidavit. The same logical inference may flow from any of
several scenarios- an express refusal to testify, a request that witnesses not testify, or a failure to
produce them. See Albiar v. State, 739 S.W.2d 360, 363 (Tex. Crim. App.1987) (factfinder may
infer from a party's failure to call an available, competent and material witness that the witness's
testimony would be unfavorable); Torres v. State, 552 S.W.2d 821, 825 (Tex. Crim. App.1977)
(same).
23. The "Order Presenting Motion for New Trial" submitted for the judge's signature is
numbered page 16 of Appellant's motion, is typed in the same distinctive typeface as used in
appellant's motion, and is sandwiched between appellant's Certificate of Service and one of his
affidavits.
24. Appellant argues that if it were not the trial court's policy, "why didn't the trial judge scratch
out that portion of the order that required the hearing be conducted on affidavits?" But why should he? 
If this was the type of hearing that appellant explicitly wanted-and a hearing on a motion for new trial
by affidavits is expressly permitted by Tex. R. App. P. 21.7-why should the trial judge deny him that
request?
25. See Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App.1999) ("the law of invited error
estops a party from making an appellate error of an action it induced"); Benson v. State, 496 S.W.2d
68, 70 (Tex. Crim. App.1973) (stating that "[a]ppellant cannot now be heard to complain because the
court granted him what he asked for").
26. See State v. Ross, 32 S.W.3d at 855 (stating that a trial judge may disbelieve even
uncontradicted testimony).
27. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).