02-11-135&136-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00135-CR

NO. 02-11-00136-CR

 


 
 
 Erminio Arroyos, Jr. 
 a/k/a Erminio Arroyos
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 355th
District Court OF Hood COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

          Appellant
Erminio Arroyos, Jr., a/k/a Erminio Arroyos, appeals his sentences for
possession of methamphetamine and felon in possession of a firearm.  We affirm.

Background
Facts and Procedural History

          The
State offered Appellant forty years’ confinement for his guilty pleas on drug and
weapons charges.[2]  Under the local rules,
the deadline for accepting plea bargain offers expired the Thursday before trial.[3]

          After
the deadline passed without his accepting the State’s offer, Appellant’s two
cases were consolidated and tried to a jury.  The jury returned guilty verdicts
in both cases, and having found that Appellant’s criminal history and pleas of
true to enhancement paragraphs qualified him as a habitual criminal, the jury assessed
his punishment at ninety-nine years’ confinement in each case.  The trial court
sentenced Appellant accordingly and ordered the sentences to run concurrently.

          Appellant’s
court-appointed appellate counsel filed a motion for new trial, charging that trial
counsel’s representation on the punishment issue was constitutionally deficient.
 The trial court denied the motion after a hearing.

          On
appeal, Appellant concedes that he is not entitled to have his convictions reversed,
only his sentences.  He asks for one of three remedies:  a new
punishment trial, a “proper” hearing on his motion for new trial, or an order reinstating
the State’s original forty-year plea bargain offer or instructing the trial
court to sentence Appellant to forty years’ confinement in accordance with that
offer.

Trial
Counsel’s Representation

          In
two issues, Appellant faults his trial counsel’s representation during the punishment
phase for failing to investigate mitigating circumstances in the case and for not
“properly” conducting plea negotiations on his behalf.

Standard
of Review

          To
establish ineffective assistance of counsel, an appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Davis v. State, 278 S.W.3d 346, 352 (Tex.
Crim. App. 2009); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim.
App. 1999).  When analyzing a trial court’s ruling on a motion for new trial
based on ineffective assistance of counsel, we review Strickland’s
standards through the prism of an abuse of discretion standard, meaning we
defer to the trial court’s resolutions of questions that turn on evaluations of
witness credibility.  See Kober v. State, 988 S.W.2d 230, 233 (Tex.
Crim. App. 1999).  Our role as an appellate court is limited to viewing the
evidence in the light most favorable to the trial court’s ruling and ensuring
that the standards used to determine whether counsel was ineffective were
properly applied.  See Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of the case.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  The issue is whether counsel’s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s
representation is highly deferential, and we indulge a strong presumption that counsel’s
conduct fell within a wide range of reasonable representation.  Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  A reviewing court is rarely in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

          The
second prong of Strickland requires a showing that counsel’s errors that
were identified under the first prong were so serious that they deprived Appellant
of a fair trial, that is, one with a reliable result.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, an appellant
must show there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 
Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id.  The
ultimate focus of our inquiry must be on the fundamental fairness of the
proceeding in which the result is being challenged.  Id. at 697, 104 S. Ct.
at 2070.

          Ineffective
assistance of counsel may properly be raised in a motion for new trial.  Reyes
v. State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).  In order to obtain a
hearing on a motion for new trial when the basis of the motion is ineffective
assistance of counsel, the movant must allege sufficient facts from which a
trial court could reasonably conclude both that counsel failed to act as
a reasonably competent attorney and that, but for counsel’s failure,
there is a reasonable likelihood that the outcome of the trial would have been
different.  Smith v. State, 286 S.W.3d 333, 335, 344–45 (Tex. Crim. App.
2009).

Mitigation

          In
his first issue, Appellant claims that his trial counsel (Counsel) failed to sufficiently
investigate relevant facts that might have mitigated punishment, specifically:  his
birth defect; his mother’s psychological issues; and circumstances surrounding
his brother’s death, which occurred early in Appellant’s life.

          The
record does not support this claim, though, because even if it showed that
Counsel failed to investigate these facts, there is little, if anything, in the
record to show that these facts exist.  For instance, there is no evidence in
the record to indicate what psychological issues, if any, his mother may have
had––let alone how they might have affected Appellant or might have been
germane to the issue of his punishment for these specific offenses.

          In
his second issue, addressed below, Appellant faults the trial court for not
allowing him to develop evidence on his mother’s mental health at the hearing
on his motion for new trial.  But there is nothing in the record to suggest
that Appellant made any attempt to comply with rule of evidence 103 or that the
trial court denied Appellant the opportunity to make an offer of proof.[4] 
See Tex. R. Evid. 103.  “In order to preserve error regarding a trial
court’s decision to exclude evidence, the complaining party must comply with
Rule of Evidence 103 by making an ‘offer of proof’ which sets forth the
substance of the proffered evidence.”  Mays v. State, 285 S.W.3d 884,
889 (Tex. Crim. App. 2009).  Only then can the appellate court determine
whether the exclusion was erroneous or harmful.  Id. at 890; see
Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998); Bundy v. State,
280 S.W.3d 425, 428–29 (Tex. App.—Fort Worth 2009, pet. ref’d).  Because Appellant
presented no evidence and made no bill on the issue of his mother’s mental
health and how it might have affected him in some manner relevant to mitigating
his punishment, we are left with nothing but bare suggestions in Appellant’s
brief that his mother’s mental condition may have had some effect.  But absent
more substance in the record, we can only speculate as to what her condition
might have been, how it might have affected him, and how it might be considered
mitigating.

          Similarly,
given the record—or lack thereof—before us, we can only speculate about what
mitigating weight, if any, should be credited Appellant’s apparently having
suffered a birth defect and the loss of a sibling.  Although the record
indicates the existence of these two facts—specifically, that Appellant was
born with spina bifida and that his brother passed away early in Appellant’s
life—again, there is no showing of how these facts affected Appellant and how they
might be germane to the issue of his punishment for unlawfully possessing drugs
and weapons.

          Allegations
of ineffectiveness must be firmly founded in the record.  Thompson, 9
S.W.3d at 813.  Because the allegations of ineffectiveness Appellant presents
in his first issue are not, we overrule his first issue.  See id.; see
also Mata, 226 S.W.3d at 432 (holding that it is inappropriate for
appellate courts to infer ineffective assistance of counsel).

Plea
Negotiations

          In
his third issue, Appellant complains that despite knowing that Appellant wanted
to accept a plea bargain offer rather than go to trial, Counsel did not give him
a chance to accept the offer, tell him it would expire, or convey his
acceptance to the State.

          Appellant
testified at the hearing that when he first received the State’s offer, he told
Counsel that it “was too much,” and that if the State would have lowered it, he
would have accepted “right away.”  He also testified that Counsel never returned
to tell him that the State would not reduce the offer from forty years.

          Counsel,
however, testified that he communicated to Appellant that the State’s offer was
final:

Q       [by appellate
counsel]      And he [Appellant] also, would you agree, expressed that he
didn’t want to be pulled into court in the last minute and find out that there
was no other offer, that that was it?

 

A       No, that was--that
was--that was conveyed to him, that there was no other offer.  That was the
offer.

 

Q       When was that
conversation?

 

A       It would have
been sometime prior to the trial, I’m thinking, when I’m down talking to him
about making sure he has clothing and--and--and what witnesses we need to call,
that we would have had that conversation at that time.

          Appellant
testified that he wrote to Counsel twice and that Counsel never answered his
letters, but he admitted that he never wrote to Counsel to tell him specifically
that he wanted to accept the offer of forty years.

          Appellant
further testified as follows:

Q       [by
appellate counsel]      If [Counsel] had come back to you and said, “40 years
is best.  We’re going to do that,” what would your intention be then?

 

A       Then I would
have probably signed, sir.

 

Q       You would
have accepted the offer?

 

A       I probably
would have.

          On
cross-examination, Appellant testified as follows:

Q       [by
the State]         And your testimony here when asked if you would have taken
the 40-year plea bargain offer, your answer was you probably would have taken
the deal?

 

A       I would have
tooken [sic] it, sir, because my family came down here especially for--

 

Q       I understand
that’s what you’re saying on cross, but on direct examination, did you say,
even today, that you probably would have taken it?

 

A       I would have
tooken [sic] the 40.

          Counsel
testified that Appellant rejected the State’s offer, that he communicated Appellant’s
rejection of the offer to the State, and that the State would not reduce the
offer:

Q       . . . The
plea bargain offer in these cases was 40 years and 30 years.

 

A       Yes.

 

Q       And since the
40-year case, that’s a bigger number than 30, 40 was the one that was most
important, is that right?

 

A       That’s
correct.

 

Q       And you
explained that to the defendant.

 

A       I did.

 

Q       And he didn’t
want to accept that offer.

 

A       No, he did
not.

 

Q       And you
communicated with the DA’s office that the defendant wanted a better offer.

 

A       Yes, I did.

 

Q       And you
didn’t get one.

 

A       No.

          Counsel
also testified that Appellant persisted in rejecting the offer past the
deadline until the day of trial.

Q       Okay.  You
went to speak to [Appellant] the Wednesday before trial.

 

A       To the best
of my recollection.

 

Q       And he did
not tell anyone that he wanted to take the 40 years.

 

A       He did not.

 

Q       And you told
him that if he wanted to accept the--if he wanted to accept that offer, he
needed to tell you.

 

A       I do not
recall whether I told him that or not.

 

Q       But you know
that that’s the case.  I mean that’s what--

 

A       I do.

 

Q       And, in fact,
there’s a plea deadline on Thursday.

 

A       I know that.

 

Q       And that’s
why it would be important to talk to him on Wednesday.

 

A       Yes.

 

Q       Find out what
he wants to do.

 

A       Yes.

 

Q       And [Appellant]
never told you he wanted to take 40 years.

 

A       He did on the
day of trial.

 

Q       Okay.  And at
that point, the--the offer was--was withdrawn, correct, or is past the plea deadline?

 

A       Yes, it was
past the plea deadline.

 

Q       So it doesn’t
really matter at that point.

 

A       And I told
him that, yes.  I said, “This is a little bit too late.”

 

                    . . . .

Q       . . . [D]id
the defendant repeatedly state he did not want to take 40 years, 40 years was
too much?

 

A       That’s what--that’s--that
seemed to be his stance, from my memory, all throughout, until the day of
trial.

          Counsel
directly contradicted the allegations in Appellant’s motion-for-new-trial affidavit
that Counsel failed to communicate with him about the plea bargain offer:

Q       Okay. 
There was [sic] some things in this affidavit that the defendant has sworn to. 
He says that he asked you to speak to his family and--and then discuss the plea
bargain, come back and discuss the plea bargain offer with him.  Is that true?

 

A       Yes.

 

Q       And but then
the defendant says here that you never did that.  Is that--is that true or
false, that you never--

 

A       I--I’m
sorry.  Is that statement true or false, or did I do that?

 

Q       Is--is--did--did
you ever come back and talk with him about the plea bargain after you spoke with
his family?

 

A       Yes.

 

Q       All right. 
So if he said that you didn’t, that’s just not true.

 

A       That’s
correct.

 

Q       All right. 
And he says in this affidavit that you spoke with him on November 19th and then
he never heard from you again.  That’s not true, is it?

 

A       No, it’s not
true.

 

Q       It’s just
false.  Okay.  If the--if the defendant had told you that, in a timely manner,
that he wanted to take the--the 40 years, you would have communicated that to
my office, would you not have?

 

A       I urged him
to take that offer, and I definitely would have communicated that to the DA’s
office.

 

Q       And you’ve
practiced in this court a long time.

 

A       I have.

          Counsel
testified that it was his usual practice to visit clients in jail the Wednesday
before trial:

Q       . . . And
in the course of you encouraging defendants to accept the plea bargains that
you think are reasonable, do you tell them that they have to tell you that they
want to accept the plea bargain offers in a timely fashion?

 

A       I don’t know
that I actually ever made a statement like that, that “You have to tell me in a
timely fashion.”  I mean, you know,--

 

Q       Well,--

 

A       --I kind of
tell them how it has to be done and when it has to be done.

 

Q       And--and when
does it have to be done?

 

A       Well, it
always has to be done at--at five o’clock on a Thursday prior to the trial
setting.

 

Q       And--and
that’s what you communicate to your clients so that they can accept the offers,
if that’s what they want to do?

 

A       That’s true.

          And
although Counsel candidly admitted that he could not state with certainty that
he followed his usual practice in this specific case, he testified that he
communicated with Appellant often through Appellant’s sister:

Q       [by
appellate counsel]      Okay.  So you said that it is your general practice to
go to the jail the Wednesday before trial to meet with your client.

 

A       That’s right.

 

Q       But in this
case, I mean you’re saying that’s your usual practice, but you can’t say for
sure whether you did it or not.

 

A       This was a
strange case because his sister was visiting him like every week, and she--and
she called me every week, so the communication was--was--was a lot of times
through his sister of what was going on in this case.

 

. . . .

 

Q       Can you say
for sure in this specific case if you went to the jail Wednesday before trial
or not?

 

A       No.

          In
order to satisfy Strickland’s first prong, an appellant must overcome
the strong presumption of adequate representation by a preponderance of the
evidence and the record must “affirmatively demonstrate the alleged
ineffectiveness.”  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813.  The record in this case shows a conflict in the testimony between Appellant
and Counsel.  Because the trial court’s resolution of that conflict is neither
arbitrary nor unreasonable, we defer to that resolution.  See Kober, 988
S.W.2d at 233.

Further,
Appellant’s testimony wavered between probably taking the State’s offer and definitely
taking it.  Given the record before us, we hold that Appellant has not met his
burden of proof under Strickland’s first prong and that the trial court
acted within its discretion to deny Appellant’s motion for new trial.  See Strickland,
466 U.S. at 687, 104 S. Ct. 2064; Davis, 278 S.W.3d at 352; Salinas,
163 S.W.3d at 740.  Accordingly, we overrule the third issue.

Hearing on the Motion for New Trial

          In
his second issue, Appellant contends that “the trial court abused its
discretion by constructively denying a hearing on his motion for new trial.” 
Appellant claims that the trial court constructively denied him a hearing
because the trial court sustained the State’s objections to certain testimony
Appellant attempted to offer on the grounds that it was irrelevant to the
matters raised in Appellant’s motion for new trial.

          We
do not accept the premise that the trial court “constructively” denied
Appellant a hearing on his motion for new trial.  He argues that “no reasonable
reading of the record in this case supports the trial court’s decision not to
order a new trial” and “[a]ny reasonable jurist, under the same circumstances
and with the same information available to the trial court, would have
determined that [Appellant] clearly demonstrated by a preponderance of the
evidence that trial counsel was ineffective.”  But if Appellant “clearly
demonstrated by a preponderance of the evidence that trial counsel was
ineffective,” he was not constructively denied a hearing.  Moreover, to the
contrary, the record shows that the trial court conducted a full evidentiary
hearing on the matters urged in Appellant’s motion for new trial and sustained
the State’s relevancy objections only when the questioning strayed from those
matters.

          For
instance, Appellant complains that the trial court cut off his questioning on
the issue of how his brother died; whether Appellant had any health conditions;
what disease he had and how it affected him; his family’s psychological history;
and whether Counsel spoke to Appellant about Appellant’s health, brother’s
death, and mother’s mental health issues.  But in neither the motion for new
trial nor its attached affidavit is there any mention of his birth defect, his brother’s
death, or his mother’s mental health.

A
new-trial motion must be supported by an affidavit specifically setting out the
factual basis for the claim.  Hobbs v. State, 298 S.W.3d 193, 199 (Tex.
Crim. App. 2009).  If the affidavit is conclusory, is unsupported by facts, or
fails to provide requisite notice of the basis for the relief claimed, no
hearing is required.  Id.  Motions for new trial are required to have
sworn affidavits attached to prevent fishing expeditions.  McIntire v. State,
698 S.W.2d 652, 658 (Tex. Crim. App. 1985).  A trial court need not grant a
hearing on matters not sufficiently detailed in a motion for new trial to put
the trial court on notice that reasonable grounds exist to support granting a
new trial.  See Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App.
1994).

          Here,
the trial court granted a hearing on the issues raised in Appellant’s motion
that were supported by facts in the affidavit.  It limited the hearing to
matters supported by facts raised in the affidavit.  We hold, therefore, that the
trial court did not abuse its discretion by sustaining relevancy objections and
thereby limiting the hearing in this case to the matters urged and supported by
facts set out in the motion that was heard.  We overrule Appellant’s second
issue.  See id.

Conclusion

          Having
overruled all of Appellant’s issues, we affirm the trial court’s judgments.

 

 

LEE GABRIEL
JUSTICE

 

PANEL:  GARDNER, McCOY, and
GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED:
 May 3, 2012









[1]See Tex. R. App. P. 47.4.





[2]The State offered thirty
years’ confinement on the drug charge and forty on the weapons charge.  The
offenses appear to have arisen from the same criminal episode.  The sentences,
therefore, would have run concurrently.  See Tex. Penal Code Ann. § 3.03(a)
(West Supp. 2011).  The parties’ briefs refer only to the forty-year offer; for
the rest of this opinion, so will we.





[3]355th (Tex.) Dist. Ct.
Loc. R. 4.6 (Hood County).





[4]“Error may not be
predicated upon a ruling which . . . excludes evidence
unless a substantial right of the party is affected, and . . . the
substance of the evidence was made known to the court by offer, or was apparent
from the context within which questions were asked.”  Tex. R. Evid. 103(a).