

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00135-CR
## NO. 02-11-00136-CR

ERMINIO ARROYOS, JR.                                               APPELLANT
A/K/A ERMINIO ARROYOS

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Erminio Arroyos, Jr., a/k/a Erminio Arroyos, appeals his sentences for possession of methamphetamine and felon in possession of a firearm. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

The State offered Appellant forty years' confinement for his guilty pleas on drug and weapons charges.[2] Under the local rules, the deadline for accepting plea bargain offers expired the Thursday before trial.[3]

After the deadline passed without his accepting the State's offer, Appellant's two cases were consolidated and tried to a jury. The jury returned guilty verdicts in both cases, and having found that Appellant's criminal history and pleas of true to enhancement paragraphs qualified him as a habitual criminal, the jury assessed his punishment at ninety-nine years' confinement in each case. The trial court sentenced Appellant accordingly and ordered the sentences to run concurrently.

Appellant's court-appointed appellate counsel filed a motion for new trial, charging that trial counsel's representation on the punishment issue was constitutionally deficient. The trial court denied the motion after a hearing.

On appeal, Appellant concedes that he is not entitled to have his convictions reversed, only his sentences. He asks for one of three remedies: a new punishment trial, a "proper" hearing on his motion for new trial, or an order

---

[2]The State offered thirty years' confinement on the drug charge and forty on the weapons charge. The offenses appear to have arisen from the same criminal episode. The sentences, therefore, would have run concurrently. *See* Tex. Penal Code Ann. § 3.03(a) (West Supp. 2011). The parties' briefs refer only to the forty-year offer; for the rest of this opinion, so will we.

[3]355th (Tex.) Dist. Ct. Loc. R. 4.6 (Hood County).

reinstating the State's original forty-year plea bargain offer or instructing the trial court to sentence Appellant to forty years' confinement in accordance with that offer.

## Trial Counsel's Representation

In two issues, Appellant faults his trial counsel's representation during the punishment phase for failing to investigate mitigating circumstances in the case and for not "properly" conducting plea negotiations on his behalf.

### *Standard of Review*

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). When analyzing a trial court's ruling on a motion for new trial based on ineffective assistance of counsel, we review *Strickland's* standards through the prism of an abuse of discretion standard, meaning we defer to the trial court's resolutions of questions that turn on evaluations of witness credibility. *See Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). Our role as an appellate court is limited to viewing the evidence in the light most favorable to the trial court's ruling and ensuring that the standards used to determine whether counsel was

ineffective were properly applied. *See Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of the case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). A reviewing court is rarely in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

4

The second prong of *Strickland* requires a showing that counsel's errors that were identified under the first prong were so serious that they deprived Appellant of a fair trial, that is, one with a reliable result. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

Ineffective assistance of counsel may properly be raised in a motion for new trial. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). In order to obtain a hearing on a motion for new trial when the basis of the motion is ineffective assistance of counsel, the movant must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of the trial would have been different. *Smith v. State*, 286 S.W.3d 333, 335, 344–45 (Tex. Crim. App. 2009).

***Mitigation***

In his first issue, Appellant claims that his trial counsel (Counsel) failed to sufficiently investigate relevant facts that might have mitigated punishment, specifically: his birth defect; his mother's psychological issues; and

5

circumstances surrounding his brother's death, which occurred early in Appellant's life.

The record does not support this claim, though, because even if it showed that Counsel failed to investigate these facts, there is little, if anything, in the record to show that these facts exist. For instance, there is no evidence in the record to indicate what psychological issues, if any, his mother may have had— let alone how they might have affected Appellant or might have been germane to the issue of his punishment for these specific offenses.

In his second issue, addressed below, Appellant faults the trial court for not allowing him to develop evidence on his mother's mental health at the hearing on his motion for new trial. But there is nothing in the record to suggest that Appellant made any attempt to comply with rule of evidence 103 or that the trial court denied Appellant the opportunity to make an offer of proof.[4] *See* Tex. R. Evid. 103. "In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an 'offer of proof' which sets forth the substance of the proffered evidence." *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). Only then can the appellate court determine whether the exclusion was erroneous or harmful. *Id.* at 890; *see Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App.

---

[4]"Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." Tex. R. Evid. 103(a).

1998); *Bundy v. State*, 280 S.W.3d 425, 428–29 (Tex. App.—Fort Worth 2009, pet. ref'd). Because Appellant presented no evidence and made no bill on the issue of his mother's mental health and how it might have affected him in some manner relevant to mitigating his punishment, we are left with nothing but bare suggestions in Appellant's brief that his mother's mental condition may have had some effect. But absent more substance in the record, we can only speculate as to what her condition might have been, how it might have affected him, and how it might be considered mitigating.

Similarly, given the record—or lack thereof—before us, we can only speculate about what mitigating weight, if any, should be credited Appellant's apparently having suffered a birth defect and the loss of a sibling. Although the record indicates the existence of these two facts—specifically, that Appellant was born with spina bifida and that his brother passed away early in Appellant's life—again, there is no showing of how these facts affected Appellant and how they might be germane to the issue of his punishment for unlawfully possessing drugs and weapons.

Allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. Because the allegations of ineffectiveness Appellant presents in his first issue are not, we overrule his first issue. *See id.*; *see also Mata*, 226 S.W.3d at 432 (holding that it is inappropriate for appellate courts to infer ineffective assistance of counsel).

*Plea Negotiations*

In his third issue, Appellant complains that despite knowing that Appellant wanted to accept a plea bargain offer rather than go to trial, Counsel did not give him a chance to accept the offer, tell him it would expire, or convey his acceptance to the State.

Appellant testified at the hearing that when he first received the State's offer, he told Counsel that it "was too much," and that if the State would have lowered it, he would have accepted "right away." He also testified that Counsel never returned to tell him that the State would not reduce the offer from forty years.

Counsel, however, testified that he communicated to Appellant that the State's offer was final:

Q    [by appellate counsel]   And he [Appellant] also, would you agree, expressed that he didn't want to be pulled into court in the last minute and find out that there was no other offer, that that was it?

A    No, that was--that was--that was conveyed to him, that there was no other offer.  That was the offer.

Q    When was that conversation?

A    It would have been sometime prior to the trial, I'm thinking, when I'm down talking to him about making sure he has clothing and--and--and what witnesses we need to call, that we would have had that conversation at that time.

Appellant testified that he wrote to Counsel twice and that Counsel never answered his letters, but he admitted that he never wrote to Counsel to tell him specifically that he wanted to accept the offer of forty years.

Appellant further testified as follows:

Q      [by appellate counsel]     If [Counsel] had come back to you and said, "40 years is best.  We're going to do that," what would your intention be then?

A      Then I would have probably signed, sir.

Q      You would have accepted the offer?

A      I probably would have.

On cross-examination, Appellant testified as follows:

Q      [by the State]      And your testimony here when asked if you would have taken the 40-year plea bargain offer, your answer was you probably would have taken the deal?

A      I would have tooken [sic] it, sir, because my family came down here especially for--

Q      I understand that's what you're saying on cross, but on direct examination, did you say, even today, that you probably would have taken it?

A      I would have tooken [sic] the 40.

Counsel testified that Appellant rejected the State's offer, that he communicated Appellant's rejection of the offer to the State, and that the State would not reduce the offer:

Q      . . . The plea bargain offer in these cases was 40 years and 30 years.

A      Yes.

9

Q      And since the 40-year case, that's a bigger number than 30, 40 was the one that was most important, is that right?

A      That's correct.

Q      And you explained that to the defendant.

A      I did.

Q      And he didn't want to accept that offer.

A      No, he did not.

Q      And you communicated with the DA's office that the defendant wanted a better offer.

A      Yes, I did.

Q      And you didn't get one.

A      No.

Counsel also testified that Appellant persisted in rejecting the offer past the deadline until the day of trial.

Q      Okay.   You went to speak to [Appellant] the Wednesday before trial.

A      To the best of my recollection.

Q      And he did not tell anyone that he wanted to take the 40 years.

A      He did not.

Q      And you told him that if he wanted to accept the--if he wanted to accept that offer, he needed to tell you.

A      I do not recall whether I told him that or not.

Q      But you know that that's the case.  I mean that's what--

10

A     I do.

Q     And, in fact, there's a plea deadline on Thursday.

A     I know that.

Q     And that's why it would be important to talk to him on Wednesday.

A     Yes.

Q     Find out what he wants to do.

A     Yes.

Q     And [Appellant] never told you he wanted to take 40 years.

A     He did on the day of trial.

Q     Okay.  And at that point, the--the offer was--was withdrawn, correct, or is past the plea deadline?

A     Yes, it was past the plea deadline.

Q     So it doesn't really matter at that point.

A     And I told him that, yes.  I said, "This is a little bit too late."

      . . . .

Q     . . . [D]id the defendant repeatedly state he did not want to take 40 years, 40 years was too much?

A     That's what--that's--that seemed to be his stance, from my memory, all throughout, until the day of trial.

Counsel directly contradicted the allegations in Appellant's motion-for-new-trial affidavit that Counsel failed to communicate with him about the plea bargain offer:

Q    Okay.  There was [sic] some things in this affidavit that the defendant has sworn to.  He says that he asked you to speak to his family and--and then discuss the plea bargain, come back and discuss the plea bargain offer with him.  Is that true?

A    Yes.

Q    And but then the defendant says here that you never did that.  Is that--is that true or false, that you never--

A    I--I'm sorry.  Is that statement true or false, or did I do that?

Q    Is--is--did--did you ever come back and talk with him about the plea bargain after you spoke with his family?

A    Yes.

Q    All right.  So if he said that you didn't, that's just not true.

A    That's correct.

Q    All right.  And he says in this affidavit that you spoke with him on November 19th and then he never heard from you again.  That's not true, is it?

A    No, it's not true.

Q    It's just false.  Okay.  If the--if the defendant had told you that, in a timely manner, that he wanted to take the--the 40 years, you would have communicated that to my office, would you not have?

A    I urged him to take that offer, and I definitely would have communicated that to the DA's office.

Q    And you've practiced in this court a long time.

A    I have.

12

Counsel testified that it was his usual practice to visit clients in jail the Wednesday before trial:

> Q ... And in the course of you encouraging defendants to accept the plea bargains that you think are reasonable, do you tell them that they have to tell you that they want to accept the plea bargain offers in a timely fashion?
>
> A I don't know that I actually ever made a statement like that, that "You have to tell me in a timely fashion." I mean, you know,--
>
> Q Well,--
>
> A --I kind of tell them how it has to be done and when it has to be done.
>
> Q And--and when does it have to be done?
>
> A Well, it always has to be done at--at five o'clock on a Thursday prior to the trial setting.
>
> Q And--and that's what you communicate to your clients so that they can accept the offers, if that's what they want to do?
>
> A That's true.

And although Counsel candidly admitted that he could not state with certainty that he followed his usual practice in this specific case, he testified that he communicated with Appellant often through Appellant's sister:

> Q [by appellate counsel] Okay. So you said that it is your general practice to go to the jail the Wednesday before trial to meet with your client.
>
> A That's right.
>
> Q But in this case, I mean you're saying that's your usual practice, but you can't say for sure whether you did it or not.

13

A     This was a strange case because his sister was visiting him like every week, and she--and she called me every week, so the communication was--was--was a lot of times through his sister of what was going on in this case.

. . . .

Q     Can you say for sure in this specific case if you went to the jail Wednesday before trial or not?

A     No.

In order to satisfy *Strickland's* first prong, an appellant must overcome the strong presumption of adequate representation by a preponderance of the evidence and the record must "affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813. The record in this case shows a conflict in the testimony between Appellant and Counsel. Because the trial court's resolution of that conflict is neither arbitrary nor unreasonable, we defer to that resolution. *See Kober*, 988 S.W.2d at 233.

Further, Appellant's testimony wavered between probably taking the State's offer and definitely taking it. Given the record before us, we hold that Appellant has not met his burden of proof under *Strickland's* first prong and that the trial court acted within its discretion to deny Appellant's motion for new trial. *See Strickland*, 466 U.S. at 687, 104 S. Ct. 2064; *Davis*, 278 S.W.3d at 352; *Salinas*, 163 S.W.3d at 740. Accordingly, we overrule the third issue.

**Hearing on the Motion for New Trial**

In his second issue, Appellant contends that "the trial court abused its discretion by constructively denying a hearing on his motion for new trial." Appellant claims that the trial court constructively denied him a hearing because the trial court sustained the State's objections to certain testimony Appellant attempted to offer on the grounds that it was irrelevant to the matters raised in Appellant's motion for new trial.

We do not accept the premise that the trial court "constructively" denied Appellant a hearing on his motion for new trial. He argues that "no reasonable reading of the record in this case supports the trial court's decision not to order a new trial" and "[a]ny reasonable jurist, under the same circumstances and with the same information available to the trial court, would have determined that [Appellant] clearly demonstrated by a preponderance of the evidence that trial counsel was ineffective." But if Appellant "clearly demonstrated by a preponderance of the evidence that trial counsel was ineffective," he was not constructively denied a hearing. Moreover, to the contrary, the record shows that the trial court conducted a full evidentiary hearing on the matters urged in Appellant's motion for new trial and sustained the State's relevancy objections only when the questioning strayed from those matters.

For instance, Appellant complains that the trial court cut off his questioning on the issue of how his brother died; whether Appellant had any health conditions; what disease he had and how it affected him; his family's

psychological history; and whether Counsel spoke to Appellant about Appellant's health, brother's death, and mother's mental health issues. But in neither the motion for new trial nor its attached affidavit is there any mention of his birth defect, his brother's death, or his mother's mental health.

A new-trial motion must be supported by an affidavit specifically setting out the factual basis for the claim. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required. *Id.* Motions for new trial are required to have sworn affidavits attached to prevent fishing expeditions. *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985). A trial court need not grant a hearing on matters not sufficiently detailed in a motion for new trial to put the trial court on notice that reasonable grounds exist to support granting a new trial. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).

Here, the trial court granted a hearing on the issues raised in Appellant's motion that were supported by facts in the affidavit. It limited the hearing to matters supported by facts raised in the affidavit. We hold, therefore, that the trial court did not abuse its discretion by sustaining relevancy objections and thereby limiting the hearing in this case to the matters urged and supported by facts set out in the motion that was heard. We overrule Appellant's second issue. *See id.*

16

## Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's judgments.

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, McCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 3, 2012