**Freddie Lee KOBER, Appellant,**

v.

**The STATE of Texas.**

No. 0048–98.

Court of Criminal Appeals of Texas.

March 10, 1999.

Frances M. Northcutt, Houston, for appellant.

Dan McCrory, Asst. Dist. Atty., Houston, for Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, WOMACK, and KEASLER, JJ., joined.

On January 12, 1994, appellant pled nolo contendere to the charge of murder without an agreed recommendation for punishment. The trial court deferred adjudication and placed appellant on probation for ten years. On March 31, 1995, the State filed a motion to adjudicate guilt. The trial court subsequently adjudicated appellant guilty and sentenced him to twenty years imprisonment. Appellant filed a motion for new trial, the trial court conducted a hearing, and the motion was denied.

On appeal, appellant contended that he received ineffective assistance of counsel because his trial attorney failed to interview the State's only witness, Sylvia Cardenas. Relying on the familiar *Strickland v. Washington*[1] standard, the Court of Appeals reversed, finding that appellant's attorney was deficient in failing to interview Cardenas and that had the attorney conducted such an interview, "he might have discovered that Cardenas might possibly have had a credibility problem because she was under the influence of cocaine or that she was reluctant to testify against appellant." *Kober v. State*, No. 14–95–00864–CR, slip op. at 8, 1997 WL 590783 (Tex.App.—Houston [14th Dist.], September 25, 1997)(unpublished). In its pe-

tition for discretionary review, the State contends that the Court of Appeals has misinterpreted and misapplied the prejudice prong for ineffective assistance claims. We agree, and we will reverse the Court of Appeals.

### A. Factual background

In her affidavit, attached to appellant's motion for new trial, Cardenas claimed the following: (1) that a police detective threatened and intimidated her, (2) that in two separate interviews with law enforcement officials she had denied witnessing, being present at, or knowing about a murder, (3) that she did not remember everything she related during the first interview because she had been consuming crack cocaine for eight consecutive days and had spent those days without sleep, (4) that she was never contacted by a defense investigator, and (5) that she was never given notice that she had to appear in court.[2] Invoking her Fifth Amendment privilege against self-incrimination, Cardenas refused to testify at the motion for new trial hearing.

The prosecutor testified that he personally interviewed Cardenas. He stated that Cardenas told him, consistent with her previous written statements given to law enforcement officers, that Cardenas fled the room after appellant began choking the victim (the alleged method of committing the murder). The prosecutor also testified that Cardenas exhibited no fear of the law enforcement officers with whom she had talked but that Cardenas expressed a reluctance to testify because she was afraid appellant or his friends would retaliate by killing her. Despite her fears, however, Cardenas had agreed to testify. The prosecutor also stated that Cardenas never told him anything that contradicted her story about witnessing appellant choking the deceased. The prosecutor acknowledged that Cardenas had told him that she was high during the events she described. The prosecutor also admitted that the State did not have a case without

---

1. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

2. We have assigned numbering to the significant statements in Cardenas' affidavit for ease of understanding and reference.

Cardenas' testimony. While acknowledging that Cardenas possessed some credibility problems, the prosecutor testified that he believed what she told him.

Appellant's trial attorney admitted that he did not speak to Cardenas but explained that, based upon conversations with the prosecutor, he had no reason to believe that Cardenas would testify inconsistent with the statement she gave to the police. The attorney additionally testified that he told appellant that he was relying upon the prosecutor's representations and had not in fact talked to Cardenas. The trial attorney explained to appellant that, although the State's case was weak, if Cardenas testified consistently with her statement, appellant ran the risk of a jury convicting him. Defense counsel also explained the consequences of a conviction after trial, the consequences of a deferred adjudication, and that appellant would face the full range of punishment if he obtained deferred adjudication probation and his probation were later revoked. And, the trial attorney told appellant that whether to plead guilty or attempt to obtain deferred adjudication was appellant's decision to make.

When asked by appellate counsel if the prosecutor had ever told him that Cardenas was on cocaine, trial counsel replied that he did not know if the prosecutor had told him that but that trial counsel "may have assumed that just because of the circumstances of the case." Trial counsel also testified that the State's file was open and that he had looked at the file.[3]

Appellant also testified at the motion for new trial hearing. He stated that he had consistently insisted he was not guilty but that he decided to plead nolo contendere after his attorney explained that Cardenas would testify and a jury could choose to convict him on that testimony. Appellant also said that counsel's statement that Cardenas would testify led him to believe that counsel had talked to Cardenas. Appellant admitted that counsel never actually said that he had talked to Cardenas. Appellant testified that counsel never told him that

Cardenas was reluctant to testify at trial. Appellant also testified about a phone call made by Cardenas to appellant after trial while he was in prison. Appellant explained that she was in a "good frame" of mind because she "had no narcotics in her."

In addition, John Castillo, a private investigator, testified that he had notarized the affidavit of Cardenas that was produced for the motion for new trial. He stated that the affidavit accurately reflected Cardenas' statements and that Cardenas made the affidavit voluntarily.

**B. Prejudice prong of *Strickland***

■ To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) deficient performance, and (2) prejudice. *Strickland v. Washington, supra.* To satisfy the prejudice prong of *Strickland,* the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In the context of a plea of guilty or of nolo contendere, that standard requires the defendant to show a reasonable probability that "but for defense counsel's errors," the defendant "would not have pleaded guilty and would have insisted on going to trial." *Ex Parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App.1997)(citing *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

■ The Court of Appeals' only application of the prejudice prong of *Strickland* was its statement that defense counsel "*might have discovered* that Cardenas *might possibly have had* a credibility problem because she was under the influence of cocaine or that she was reluctant to testify against appellant*" (emphasis added). The Court of Appeals did not state that there existed a *reasonable probability* that defense counsel would have discovered the potential credibility problem or Cardenas' reluctance to testify. Some possibility that an error might affect the proceedings is insufficient to show prejudice under *Strickland:* "It is not enough for

---

**3.** The State's file is not contained in the record, nor did the parties attempt to delineate an exhaustive list of its contents. Defense counsel did indicate that Cardenas' written statements to law enforcement officers were in the file.

the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. 2052. Moreover, even if the phrase "might have discovered" were interpreted to mean "reasonable probability," the Court of Appeals did not determine that there existed a reasonable probability that discovery of the potential credibility problem and/or discovery of the reluctance to testify would have resulted in appellant deciding not to plead guilty. The Court of Appeals' analysis under the prejudice prong of *Strickland* is, at best, incomplete.

■■■ But even if we were to accept that the Court of Appeals held that there existed a reasonable probability that the discovery of the information in question would have caused appellant to decide not to plead guilty, we would find such a conclusion to be untenable in light of the present record. Although the prejudice prong of *Strickland* is a mixed question of law and fact, that question often contains subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses. *See Strickland*, 466 U.S. at 698, 104 S.Ct. 2052. Appellate courts must "afford almost total deference" to a trial court's determination of the historical facts and of mixed questions of law and fact that "turn[ ] on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Whether Cardenas' affidavit denying that she witnessed a murder is true is a question of historical fact to be determined by the trial court. Further, the trial court was in a position to evaluate the credibility of the prosecutor and defense trial counsel concerning their testimony during the motion for new trial hearing.

■■■ The Court of Appeals' conclusion that defense counsel "might have discovered" a potential credibility problem with Cardenas due to her usage of cocaine necessarily assumes that defense counsel and appellant were unaware of Cardenas' cocaine usage. But appellant has failed to demonstrate that assumed fact. Appellant did not testify that he was unaware of Cardenas' cocaine usage nor did he testify that counsel failed to inform him about Cardenas' cocaine usage.

And, counsel never testified that he was unaware of Cardenas' cocaine usage or that he was unaware that Cardenas was high on cocaine during the events in question. Appellant has failed in his burden under the prejudice prong of *Strickland* to produce evidence showing that he and counsel were unaware of Cardenas' potential credibility problem due to cocaine usage.

Moreover, even if appellant had produced such evidence, there exists evidence in the record indicating that appellant and counsel did in fact know of Cardenas' cocaine usage and any attendant credibility problems. Appellant's comment that Cardenas "had no narcotics in her" could have been taken by the trial court as some indication that appellant was aware of Cardenas' cocaine habit. And the trial court could have inferred from counsel's comments about assuming Cardenas was on cocaine and about the State's "weak" case that counsel and appellant were well aware of the potential credibility issue. Moreover, the trial court could have believed that the cocaine issue surfaced in other documents contained in the State's file, which was open to and examined by defense counsel. If counsel and appellant were in fact aware of the cocaine credibility issue from other sources, then an interview with Cardenas on the subject would have revealed nothing new, and thus would not have affected appellant's decision to plead nolo contendere.

■■■ As for information regarding Cardenas' reluctance to testify, such reluctance is significant only if one infers that Cardenas would have declined to testify at trial had counsel interviewed her. That inference, in turn, assumes either that: (1) Cardenas would decline to testify because she feared retaliation from appellant, or (2) Cardenas would decline to testify because her statements implicating appellant in the murder were untrue. Assumption (1) cannot be used to show prejudice. If counsel conveyed information that caused Cardenas to withdraw as a witness due to a fear of appellant, counsel would likely be participating in the crime of obstruction or tampering with a witness. *See* Texas Penal Code §§ 36.05 & 36.06. Counsel cannot be considered ineffective under the Sixth Amendment for failing

to effectuate criminal conduct. *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986)("the right to counsel includes no right to have a lawyer who will cooperate with planned perjury"); *Georgia v. McCollum*, 505 U.S. 42, 58, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)("neither the Sixth Amendment right nor the attorney-client privilege gives a criminal defendant the right to carry out through counsel an unlawful course of conduct").

Assumption (2) depends upon the truthfulness of Cardenas' affidavit. If Cardenas was in fact coerced into giving the statements implicating appellant, when in actuality she had witnessed no murder, then an interview by defense counsel *may* have elicited those facts. But, for several reasons, the trial court was free to disbelieve Cardenas' affidavit. First, Cardenas' refusal to testify at the motion for new trial hearing was sufficient grounds for disregarding her affidavit. A witness' unwillingness to support an affidavit with live testimony could itself be considered evidence that the affidavit is untrue. Second, the prosecutor's testimony at the motion for new trial hearing was inconsistent with Cardenas' claims in her affidavit. The prosecutor's testimony that Cardenas did not appear to be afraid of the law enforcement officers with whom she talked rebutted the affidavit's claims of police coercion. And, the prosecutor's testimony that Cardenas repeated the same story she gave in her earlier statements indicated that those earlier statements, not the affidavit, were truthful. Hence, the trial court could have disbelieved Cardenas' affidavit. Without the affidavit, there is no reason to believe that an interview by defense counsel with Cardenas would have dissuaded Cardenas from testifying at trial.

Because the trial court was entitled to believe that trial counsel and appellant already knew about Cardenas' possible credi-

bility problem due to cocaine usage and because the trial court was entitled to believe that a defense counsel interview with appellant would not have changed Cardenas' decision to testify against appellant, no reasonable probability exists that interviewing Cardenas would have changed appellant's decision to plead nolo contendere.

■ Although the Court of Appeals professed to follow *Strickland*, it failed to apply the test properly to the facts of this case. When an appellate court has cited the proper standard for review, but has misapplied the standard, we generally do not remand the case to that court for reconsideration. *Compare Jackson v. State*, 973 S.W.2d 954 (Tex. Crim.App.1998) (court of appeals misapplied *Strickland*; conviction affirmed) and *Yzaguirre v. State*, 957 S.W.2d 38 (Tex.Crim. App.1997)(court of appeals erred in finding prejudice under *Strickland*; conviction affirmed) *with Valencia v. State*, 946 S.W. 2d 81 (Tex.Crim.App.1997)(court of appeals should have applied *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980) rather than *Strickland* standard; case remanded).[4]

The judgment of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

MEYERS, J. filed a dissenting opinion in which PRICE, HOLLAND, and JOHNSON, JJ. joined.

MEYERS, J., delivered a dissenting opinion, in which PRICE, HOLLAND, and JOHNSON, J. J., joined.

I concur in the portion of the majority opinion which concludes the court of appeals erred in reversing Appellant's conviction due to ineffective assistance of counsel, as well as the portion of the majority opinion which explains the analysis required under the second prong of the *Strickland* test. I dissent

---

4. The dissent claims we should remand the case to the Court of Appeals. In support of this course of action, the dissent relies on cases that were remanded for matters such as a factual sufficiency review (which we do not have jurisdiction to perform in non-capital cases), or a harm analysis (which the court had neglected to perform), or for consideration of the merits of a claim the court of appeals had erroneously found

was waived (because there was no waiver). There is a difference between cases in which the intermediate court has, in effect, not completed the required analysis and those in which a complete analysis under the proper standard has purportedly been done, but done incorrectly. Remanding a case under the circumstances here present is inappropriate.

because the majority chooses to perform that analysis instead of remanding this case to the court of appeals so the appellate court can apply the proper test.

When this Court acts in its capacity as a discretionary review court, we may only review "decisions of the courts of appeals." Tex.Code Crim. Pro. art. 44.45;[1] Tex.R.App. Pro. 200(a).[2] *See also* Texas Constitution Article V sec. 5. We have repeatedly held that we do not reach the merits of any party's contention when it has not been addressed by the lower appellate court. *Lee v. State*, 791 S.W.2d 141, 142 (Tex.Crim.App. 1990).[3] We continue to reaffirm this principle. *See, e.g., Musgrove v. State*, 960 S.W.2d 74, 76 (Tex.Crim.App.1998) ("The Court of Appeals has not had the opportunity to address that issue, so there is no Court of Appeals' decision on the issue for this Court to review").[4]

For example, in *Cain v. State*, 958 S.W.2d 404 (Tex.Crim.App.1997), we granted review to determine whether the court of appeals performed a proper harmless error analysis. We said "[i]f we determine that the court of appeals applied an improper legal standard or failed to consider the relevant law, our only possible action is to remand the case to the court of appeals to review the factual sufficiency under the correct standard." *Cain*, 958 S.W.2d at 408. This is so in part because "[i]t is not ordinarily this Court's bailiwick to pass upon questions of harm in the first instance." *Hoang v. State*, 939 S.W.2d 593, 598 (Tex.Crim.App.1996), *citing Owens v. State*, 827 S.W.2d 911, 917 (Tex. Crim.App.1992) and *Saenz v. State*, 843 S.W.2d 24, 29 (Tex.Crim.App.1992). This Court should take the same approach in the present case.

The State's petition for discretionary review asks whether the court of appeals erred in reversing Appellant conviction on ineffectiveness of counsel without properly considering the second prong of the *Strickland* test. The majority correctly holds "[t]he court of appeals' analysis under the prejudice prong of *Strickland* is, at best, incomplete." *Maj. Op.* at 233. We have answered the question presented in the State's petition for discretionary review, and we have laid out the proper legal standard in sufficient detail to illustrate where the court of appeals erred. Our job is done. The appropriate course of action is to remand this case so that the court of appeals can complete its analysis.

With these comments, I concur in the conclusion that the court of appeals erred and the majority opinion's explanation of the legal standard embodied in the second prong of *Strickland*. I dissent because this Court should remand this case to the court of appeals.

---

1. Subsection a reads: "The Court of Criminal Appeals may review decisions of the court of appeals on its own motion." Subsection b reads: "The Court of Criminal Appeals may review decisions of the court of appeals upon a petition for discretionary review."

2. "The Court of Criminal Appeals, on its own motion, with or without a petition for discretionary review being filed by the appellant or the State, may review a decision of a court of appeals in a criminal case."

3. *See also Fox v. State*, 930 S.W.2d 607 (Tex. Crim.App.1996) ("community caretaking" question not presented to lower court); *Cooper v. State*, 933 S.W.2d 495, 496 (Tex.Crim.App.1996) (theory of admissibility not addressed by court of appeals); *Connor v. State*, 877 S.W.2d 325, 327 (Tex.Crim.App.1994) (question regarding assistance of counsel on motion for new trial not addressed by lower court).

4. *See also State v. Johnson*, 939 S.W.2d 586 (Tex. Crim.App.1996); *Sotelo v. State*, 913 S.W.2d 507, 509 (Tex.Crim.App.1995) ("we do not reach the merits of any party's contention when it has not been addressed by the lower appellate court").