**Opinion issued August 7, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00131-CR

————————————

## YROOJ SHAMIM, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 3
Harris County, Texas
Trial Court Case No. 1822364**

---

## O P I N I O N

Yrooj Shamim filed a motion for rehearing of our opinion issued on June 19, 2014. Shamim's motion for rehearing is overruled, our June 19 opinion is withdrawn, and the following substitute opinion is issued in its place.

A jury convicted Yrooj Shamim of assault of a family member—his wife, S. Zehra.[1] The trial court sentenced Shamim to one year of confinement but suspended the sentence to place Shamim on community supervision for two years. Shamim filed a motion for new trial, arguing that his trial counsel provided ineffective assistance of counsel. Following an evidentiary hearing, the trial court denied the motion.

In three issues, Shamim contends that the trial court erred by denying his motion for new trial because his counsel failed to (1) complete a thorough factual investigation of his case, (2) keep him reasonably informed of the status of his case or prepare him for trial, and (3) recognize that a conflict of interest existed in counsel's representation of Shamim and his father, both of whom were charged with assaulting Zehra.

## Background

### A. The domestic incident and trial

Zehra, the complainant, called for police assistance after a domestic incident at the home she shared with her husband, Shamim, and his parents. Houston Police Officer P. Robles, who investigated the incident, testified at trial. According to Officer Robles, Zehra's father-in-law and sister-in-law answered the door when he arrived; they told him "they were having problems with" Zehra because she was

---

[1]     TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b) (West Supp. 2013) (providing that assault of family member is Class A misdemeanor).

"crazy" and "going off." Officer Robles testified that he thought they were trying to "just get[] me to go ahead and leave." When Officer Robles spoke with Zehra, he noticed an injury on her forehead. Zehra told him that her father-in-law had hit her and that "they" had pushed her, threw her to the floor, and pulled her hair.

Officer Robles called for a female officer to assist in the investigation to determine whether Zehra had any additional injuries on her body beyond the one he could see on her forehead. Officer M. Smith testified that she responded to the call and photographed Zehra's injuries. Officer Smith observed bruises on Zehra's upper arm that were consistent with a hand-mark, as well as bruises on her forehead, under her eye, and on her hip. The photographs were admitted as evidence.

Officer Robles's supervisor, Sergeant T. Anderson, also investigated the incident. He testified that Zehra had bruises near her left eye and a large knot on her forehead that "looked like a golf ball." According to Sergeant Anderson, Zehra told him that Shamim grabbed her by the arm and that both Shamim and her father-in-law had assaulted her.

Based on Zehra's statements to Sergeant Anderson, her visible injuries, and information he received from Officer Robles, Sergeant Anderson arrested both Shamim and the father-in-law. The father-in-law, who was present during the investigation, was arrested immediately. Shamim, however, was no longer home;

the police called him and arranged to meet him at a nearby intersection, where he was arrested. Both men hired the same attorney, Daniel Corrigan, to represent them in their separate trials.

Shamim was tried first. Although the police had noted injuries to Zehra's face, including bruises and a knot on her forehead, the indictment included only a Class A misdemeanor assault charge, narrowly described as "causing bodily injury . . . by pulling [Zehra] with his hands." *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b) (West Supp. 2013) (classifying assault of family member as Class A misdemeanor).

At trial, Zehra testified about all of the events surrounding the domestic dispute call. She explained that the day Officer Robles and Sergeant Anderson arrived at her house was actually the second day in a row that she had called the police regarding her husband's violence. She stated that Shamim had "beat[en]" her the day before and he was still angry with her for getting the police involved. She testified that on the second day, after breakfast, Shamim pulled her by the hair and told her that she had to leave the house. Shamim then left for work. According to Zehra, when Shamim returned home for lunch, he grabbed her by the arm and tried to drag her out of the house while threatening to take her to a "mental asylum." She stated that her father-in-law and sister-in-law were verbally abusive during the altercation and that her father-in-law "grabbed me by my head and

4

pushed it against the wall." She ran to the master bathroom, and Shamim followed her. She locked herself behind an interior door and called the police. When the police arrived, Shamim had already left the home.

Sergeant Anderson—an officer with 20 years' experience with the Houston Police Department—testified: "I've been around a lot of domestic violence, and she was one of the worst I've seen."

Zehra's sister-in-law testified in Shamim's defense. She denied any knowledge of Shamim assaulting Zehra. Despite being confronted with photographs of Zehra's injuries, she asserted that Zehra had no physical injuries when the photographs were taken and offered that maybe Zehra "did it to herself."

Shamim testified that he had never assaulted Zehra, and described Zehra as having "anger management issues." According to Shamim, the morning he was arrested was uneventful: he left for work then returned for lunch but was at the house only "five to ten minutes." He did not see any injuries on his wife when he was home. A couple of hours later, the police called, instructed him to meet them, and arrested him.

The jury convicted Shamim of assault of a family member, specifically described as pulling Zehra with his hands.

**B.      The denial of Shamim's motion for new trial**

Following his conviction, Shamim filed a motion for new trial, alleging ineffective assistance of counsel. In his written motion, he asserted that Corrigan "fail[ed] to conduct a thorough factual investigation of the case, fail[ed] to keep [him] reasonably informed, and fail[ed] to call material witnesses to testify at trial." The trial court held an evidentiary hearing and received testimony from Shamim and Corrigan.

Shamim testified that Corrigan did not have in-person meetings with him as often as he requested; did not interview available defensive witnesses; did not investigate the facts underlying the assault charge, possible alibi evidence, or inconsistencies in Zehra's statements; and did not pursue available defensive theories, e.g., that his father acted alone in assaulting Zehra.

Corrigan testified that he met with Shamim and the father-in-law and that both had adamantly denied harming Zehra. He investigated the case by reviewing the State's file as well as several documents presented to him by Shamim and Shamim's family members. He also interviewed Shamim, the father-in-law, the sister-in-law, Shamim's proposed alibi witness, and another defense witness.

Corrigan explained his trial strategy at the new-trial hearing. He stated that he was attempting to keep the focus on the narrowly-worded offense Shamim was accused of committing—pulling Zehra with his hands—and to avoid evidence that

6

would indicate to the jury that the assault was "an ongoing situation." He testified that he read Officers Robles and Anderson's offense report and was familiar with their factual assertions and likely testimony. Given that the charged offense was much narrower than the full array of accusation and injuries that resulted from Zehra's conflict with her husband and father-in-law that day, Corrigan declined to conduct an additional investigation of those officers' factual assertions beyond what was contained in the police report.

Likewise, he determined that additional investigation was unwarranted concerning a prior investigation by two different police officers—Nguyen and Koller—who had been at the home the day before in response to another dispute between Shamim and Zehra and, separately, a few months earlier to investigate additional allegations of family violence. Corrigan testified at the new-trial hearing that Officers Nguyen and Koller did not investigate the charged offense and, therefore, would not have had knowledge relevant to whether Shamim pulled on Zehra as alleged. Officers Nguyen and Koller may have had knowledge that Zehra had bruises on her face the day before she alleged that Shamim pulled her hair and arm, but those facial injuries were not the basis of the charge against Shamim. Accordingly, he did not pursue interviewing those two officers either.

Corrigan explained why he did not seek to admit into evidence a statement from Zehra that Shamim had described as impeachment-type evidence. Corrigan

7

testified that the statement included "a long list" of bad facts and references to additional abuse, and—consistent with his trial strategy—he wanted to avoid injecting other abuse allegations into the trial. Further, Corrigan stated that he asked the State about Zehra's interest in pursuing the charges and was told that she had not recanted, despite Shamim's assurances to the contrary.

Regarding the unused "alibi" evidence that Shamim claims Corrigan ignored, Corrigan explained that he investigated the evidence and found it unhelpful. According to Corrigan, the evidence indicated only that Shamim had used his debit card on the afternoon he was arrested and that he had been with a co-worker at some point after lunch. In Corrigan's professional judgment, this evidence could not be used persuasively as alibi evidence, given Shamim's admission that he was home during lunch for at least "five to ten minutes," which was ample time to have pulled Zehra with his hands. Despite Shamim's characterization of this unused evidence as "alibi"-style evidence, Corrigan determined that it was unhelpful to Shamim's defense.

Finally, Corrigan testified that Shamim and his father were "adamant" that neither had harmed Zehra and, as a result, it was his professional opinion that there was no conflict of interest in defending both of them in separate trials.

Following the evidentiary hearing, the trial court denied the motion for new trial. Shamim timely appealed.

## Standard of Review

Allegations of ineffective assistance of counsel must be firmly rooted in the record. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Escobar v. State*, 227 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] pet. ref'd). To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Given that Shamim raised his ineffective assistance claim in a motion for new trial, we analyze the issue on appeal as a challenge to the trial court's denial of his new-trial motion and review it under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Thus, we reverse only if the trial court's decision to deny the motion for new trial was arbitrary or unreasonable, viewing the evidence in the light most favorable to the trial court's

9

ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Starz*, 309 S.W.3d at 118.

Trial courts are in a better position to evaluate the credibility of witnesses and resolve conflicts in evidence than appellate courts, which must rely on a submitted record. *See Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). Accordingly, we defer to the trial court's decision to believe or disbelieve all or any part of a witness's testimony. *See id*. If there are two permissible views of the evidence, the trial court's choice between them cannot be held to be clearly erroneous. *Riley*, 378 S.W.3d at 457. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id*. at 457–58; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

When, as here, the trial court makes no findings of fact regarding the denial of a motion for new trial, we should "impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported in the record." *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Escobar*, 227 S.W.3d at 127.

### Failure to Investigate

Shamim alleges that Corrigan failed to conduct an adequate factual investigation in preparation for his trial. In fact, he contends that his attorney

10

wholly "failed to conduct ANY investigation" and "did absolutely nothing for [him] besides being a warm body in court and collecting a fee." Shamim specifically complains that Corrigan did not interview Zehra, Officer Robles, Sergeant Anderson, or the other two officers who came to the house to investigate earlier domestic dispute calls. Shamim also argues that Corrigan failed to investigate a possible alibi defense and other evidence indicating that Zehra had recanted the allegations against Shamim.

An attorney representing a criminal defendant has a duty to make an independent investigation of the facts of the case. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996); *Ex parte Duffy*, 607 S.W.2d 507, 516–17 (Tex. Crim. App. 1980). This includes conducting a legal and factual investigation and seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). An attorney has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. 2066. An attorney's decision not to investigate or to limit the scope of the investigation is given a "heavy measure of deference" and assessed in light of all of the circumstances to determine whether reasonable professional judgment would support the decision. *Id.*

At the hearing on the motion for new trial, Corrigan testified about his pre-trial investigation. He stated that he had read Officers Robles and Anderson's offense report detailing their observations and, therefore, had an understanding of the factual assertions those officers were making as well as their likely testimony. In his professional judgment, further investigation with those witnesses was not warranted given the narrowness of the allegation compared with the breadth of evidence of all the harm alleged to have been done to Zehra that day. Additional information on the broader array of injuries was not helpful to the defense he was presenting to the specific charge of "pulling" Zehra.

Likewise, Corrigan did not seek information from Officers Nguyen and Koller, who were at the house the day before, because, as he testified, neither had first-hand knowledge of the facts surrounding the charged offense, they did not participate in that investigation, and the State did not include them as witnesses at Shamim's trial. According to their police report, Officers Nguyen and Koller could have provided evidence that Zehra had facial bruises that pre-dated the charged offense, but Shamim was not charged with causing those injuries. Corrigan had to be wary of opening the door to additional evidence of abuse, which would be harmful to his trial strategy of limiting the scope of the trial.

Shamim contends that Officer Nguyen stated in his police report from the day preceding the "pulling" incident that Officer Nguyen did not find Zehra to be

credible. While evidence of Officer Nguyen's opinion that Zehra was not credible might have had some influence on the jury and could have been further investigated for that reason, such evidence would have been met with the testimony of Sergeant Anderson who investigated the charged offense, found Zehra to be credible, testified consistent with his offense report, and stated that Zehra was one of the worst examples of domestic abuse he had seen during the 20 years he had serviced with the Houston Police Department. As Corrigan testified, he did not see the benefit of additional investigation with Officers Nguyen and Koller, given the limited scope of the charged offense.

Further, Shamim's family had told Corrigan that Officers Nguyen and Koller had been to the house several months earlier on a third, completely unrelated domestic dispute call. It was Corrigan's professional judgment that testimony from Officer Nguyen—who the State did not call as a witness—could have indicated to the jury that this was "an ongoing situation" of abuse. Had Corrigan pursued Officer Nguyen's involvement in the investigation and injected him into the trial, Corrigan might have opened the door to other, prior incidents of domestic abuse, which he was attempting to avoid.

Regarding the alibi evidence, Corrigan testified that he had reviewed the document Shamim sought to use to establish an alibi—namely, a bank record indicating that Shamim had used his debit card on the afternoon of the incident. It

13

was Corrigan's professional opinion that the bank statement would not be helpful to Shamim's defense because Shamim admitted that he went home for lunch. Moreover, evidence that he used a debit card that afternoon was not inconsistent with the State's theory of the case that Shamim "pulled" on Zehra during the five to ten minutes he admittedly was home.

Regarding the potential impeachment evidence, Corrigan testified that he had investigated the matter but chose not to admit into evidence a statement purportedly written by Zehra because, according to his review of the document, it contained additional bad facts and details of abuse that would have harmed Shamim's defense. Corrigan testified that he further investigated the issue by contacting the prosecutors, who confirmed to him that Zehra had not recanted, contrary to Shamim's assertions.

Finally, regarding the available witness whom Corrigan failed to present at trial, Corrigan testified that he had met with that person and determined that the witness might be helpful in the father-in-law's trial but offered no information that would benefit Shamim's defense.

Contrary to Shamim's assertion that his counsel did not conduct "any" investigation and was only a "warm body" at his trial, viewing the record in the light most favorable to the trial court's ruling, as we must, supports the conclusion that Shamim's counsel conducted an investigation into the facts of the case,

14

considered a larger body of potential evidence than he chose to offer at trial, and made his decision regarding which evidence to use based on his stated trial strategy: maintaining focus on the limited charge of "pulling" Zehra while avoiding evidence that would indicate that there was "ongoing" spousal abuse by Shamim. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 625 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that counsel demonstrated familiarity with material facts of case which discredited client's allegation that his counsel "did not conduct any pretrial investigation").

What Corrigan did not do was to pursue a deeper investigation of the abuse and injuries that resulted from Zehra's multiple conflicts with Shamim and Shamim's father. Corrigan was gathering a defense to a single allegation of one physical act and, in his professional judgment, further factual inquiry with witnesses who would testify to a more wide-spread problem of abuse with graver injuries was not helpful to that defense.

The trial court was in the best position to evaluate the credibility of these two witnesses and to resolve conflicts in the evidence in determining whether to grant a new trial. *See Kober*, 988 S.W.2d at 233; *Riley*, 378 S.W.3d at 456–58. We cannot conclude that the trial court abused its discretion in denying Shamim's new-trial motion unless there is "no reasonable view of the record" that would support the trial court's ruling. *Webb*, 232 S.W.3d at 112; *Riley*, 378 S.W.3d at 457.

15

Because this record supports the trial court's judgment, we conclude that the trial court did not abuse its discretion. *See Strickland*, 466 U.S. at 687–90, 104 S. Ct. at 2064–66.

Accordingly, we overrule Shamim's first issue.

## Failure to Communicate and Prepare

In his second issue, Shamim contends that the trial court erred in denying his motion for new trial because Corrigan failed to keep him reasonably informed of the status of his case or adequately prepare him for trial.

Trial counsel has a duty to consult with the client on important decisions and to keep the client informed of important developments in the course of the prosecution. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. To prevail on a claim of ineffective assistance of counsel for failing to adequately prepare the client to testify, a movant must demonstrate that the alleged error caused the client prejudice, i.e., that better preparation would have benefited the client and led to a better result. *See Johnston v. State*, 959 S.W.2d 230, 235–36 (Tex. App.—Dallas 1997, no pet.).

Corrigan and Shamim offered conflicting testimony concerning the frequency and content of their interactions before trial. Shamim initially took an extreme position, testifying that their level of contact was "zero to none"; however,

16

he later admitted that he met with Corrigan in-person at least twice and had multiple phone conversations with him as well.

Corrigan testified that he shared his cell phone number with Shamim and that they had multiple phone conversations in addition to their in-person meetings. According to Corrigan, the two discussed the case every time it was reset—on 13 separate occasions—and a few more times as well. Corrigan stated that he called Shamim back after Shamim texted him requesting information. He explained that he felt he could answer Shamim's questions and prepare him by phone without additional in-person meetings. Corrigan testified that, in his opinion, Shamim seemed satisfied after their phone conversations.

We conclude, based on this record and giving appropriate deference to the trial court's determination of issues of fact and credibility, that the trial court did not abuse its discretion by denying the motion for new trial on the basis of an alleged failure to communicate. *See Kober*, 988 S.W.2d at 233 (trial court given deference to determine credibility and resolve conflicts in evidence); *Webb,* 232 S.W.3d at 112 (no abuse of discretion unless no reasonable view of record could support trial court's ruling); *cf. Strickland*, 466 U.S. at 687–90, 104 S. Ct. at 2064–66 (counsel's professional services required to be objectively reasonable, not flawless).

Regarding Shamim's claim that Corrigan did not adequately prepare him for trial, the evidence, when viewed in the light most favorable to the trial court's ruling, does not support Shamim's contention. *Riley*, 378 S.W.3d at 457.

Corrigan testified at the new-trial hearing that he did have discussions with Shamim to prepare him for trial, they "went over everything" during their phone conversations, and he actually had more pre-trial, case-related conversations with Shamim than was typical with other clients. While Shamim disputes the substance and value of these phone conversations, there is ample evidence in the record for the trial court to have concluded that counsel was not proven to be deficient in his representation on this basis. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (specifying that appellant has burden of overcoming strong presumption that counsel's conduct was reasonable); *Kober*, 988 S.W.2d at 233 (noting that deference is given to trial court's determination of credibility and resolution of conflicts in evidence).

Further, Shamim does not establish how additional trial preparation would have benefited him or led to a better trial result. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 (requiring defendant to show that there is a reasonable probability that, but for counsel's deficiency, result of proceeding would have been different); *Johnston*, 959 S.W.2d at 235 (same). Even assuming it was error for counsel to rely more on phone conversations to prepare Shamim for trial than in-

18

person meetings, Shamim has failed to demonstrate how additional "in-person" meetings would have achieved a better trial result. *Perrett v. State*, 871 S.W.2d 838, 841 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (overruling claim of ineffective assistance of counsel, in part, due to client failing to show how conducting client consultation at different locales would have benefited his defense); *see Johnston*, 959 S.W.2d at 235–36. Accordingly, Shamim has not met his burden to obtain reversal on this basis. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We overrule Shamim's second issue.

### Failure to Recognize Conflict of Interest

In his third issue, Shamim argues that the trial court erred in denying his motion for new trial because Corrigan provided him ineffective assistance of counsel by failing "to recognize that a real conflict of interest existed" in representing both Shamim and his father.

Shamim made this same argument at the hearing on his new-trial motion; however, he did not include it in the written motion itself. The State objected to the "lack of notice" of the conflict-of-interest claim. Shamim explained that "until the testimony started coming out, I wasn't going to argue that." The trial court denied Shamim's motion for new trial without indicating whether it had considered his conflict-of-interest argument.

19

On appeal, Shamim argues that there was a conflict of interest, the conflict left him with ineffective assistance of counsel, and, as a result, the trial court erred in denying his motion for new trial. However, Shamim fails to cite to any authority suggesting that he can assert a new argument at the new-trial hearing after the period for amending his new-trial motion has expired. TEX. R. APP. P. 21.4(b) (providing 30-day deadline to amend new-trial motion); TEX. R. APP. P. 38.1 (requiring appropriate citation to authority). Before we can address the merits of Shamim's conflict-of-interest argument, we first must determine whether Shamim preserved this issue for appellate review. *See* TEX. R. APP. P. 33.1(a).

Rule 21 of the appellate rules concerns motions for new trial in criminal cases. *See* TEX. R. APP. P. 21. The rule states that a defendant may file a motion for new trial within 30 days of the date that the trial court imposes or suspends the defendant's sentence. TEX. R. APP. P. 21.4(a). The motion must state the grounds on which the defendant seeks a new trial. *See* TEX. R. APP. P. 21.3 (listing grounds for grant of new trial); *State v. Zalman*, 400 S.W.3d 590, 593–94 (Tex. Crim. App. 2013). "The purpose of this requirement is to allow the court enough notice to prepare for the hearing and make informed rulings and to allow the State enough information to prepare a rebutting argument." *Zalman*, 400 S.W.3d at 594. "The motion must contain enough detail to give the other party notice of what is being complained of so that it can properly prepare for the hearing." *Id*.

20

A defendant has the right to amend his motion within that same 30-day period, without leave of court, as long as the trial court has not ruled on his pending motion. TEX. R. APP. P. 21.4(b). Once the 30-day period expires, a defendant may not amend or enlarge his original motion to include additional claims, unless the State fails to make a timely objection to the amendment. *Clarke v. State*, 270 S.W.3d 573, 580–81 (Tex. Crim. App. 2008). Thus, rule 21.4(b) permits the State to insist, through objection, that the trial court limit its ruling on the motion for new trial to the originally filed or timely amended motion, without considering untimely amendments. TEX. R. APP. P. 21.4(b) (placing limits on amendment to motion for new trial); *Zalman*, 400 S.W.3d at 595 (stating that allowing defendant to rely on issue raised for first time at hearing "would defeat the notice requirements of the motion" for new trial); *Cueva v. State*, 339 S.W.3d 839, 859 (Tex. App.—Corpus Christi 2011, pet. ref'd) (holding that trial court erred by considering evidence presented at new-trial hearing that was beyond scope of written motion and to which State objected).

In *Cueva*, the appellant filed a motion for new trial claiming ineffective assistance of counsel in his criminal trial. In his motion, he specified three deficiencies, but there were "significant differences" between those claims and the ones he later argued at the hearing. *Cueva*, 339 S.W.3d at 858. The State objected to the late-added arguments. Relying on Rule 21, the appellate court held that the

trial court was not permitted to consider the untimely arguments or the evidence presented at the hearing in support of those arguments. *Id.* at 858–59 (holding that "rule 21.4(b) permits the State, after properly objecting, to insist that the trial court rule only upon the timely motion for new trial as originally filed or timely amended, but not as untimely amended."). A concurring opinion issued when the Court of Criminal Appeals denied rehearing on the petition for discretionary review expressly approved of the appellate court's analysis:

> The court of appeals correctly concluded that the new ineffective-assistance allegations and evidence related to those allegations could not have been properly considered by the trial court in rendering its ruling on the motion and that the new evidence should not be examined in its analysis of the issues on appeal. . . . I conclude the court of appeals correctly interpreted the law ... because the new matters were not raised within 30 days of the date sentence was imposed and were not a permissible amendment to the motion for new trial in light of the State's objection.

*Cueva v. State*, 354 S.W.3d 820, 822 (Tex. Crim. App. 2011) (Alcala, J., concurring in denial of motion for rehearing of Court's refusal of petition for discretional review, joined by Price & Cochran, JJ.) (citing TEX. R. APP. P. 21.4(b)).

Similarly, in *Zalman*, the defendant presented an argument at the new-trial hearing that was not contained in his timely-filed motion. 400 S.W.3d at 592. After the 30-day period for amendment expired, the defendant filed a "memorandum of law" arguing a new basis for the trial court to grant a new trial. *Id*. The defendant

proceeded to argue that point at the hearing, and, despite the State's objection to the untimely argument, the trial court granted a new trial on that basis. *Id*. The Court of Criminal Appeals reversed, holding that Rule 21 requires that the grant of new trial be consistent with the argument contained in the timely-filed motion and related evidence. *Id.* at 594–95 (explaining that, to hold otherwise, "would defeat the notice requirements of the motion."). The trial court was not permitted to consider the arguments contained in the late-filed "memorandum of law" or asserted at the hearing on the motion. *Id*.

Shamim filed his motion for new trial within the 30-day period permitted and did not file an amendment to that motion. The hearing on Shamim's motion occurred more than 30 days after the trial court imposed its sentence. Shamim raised the conflict-of-interest argument for the first time at the hearing and admitted that he had not decided to make the argument until mid-hearing. The State had no prior notice of this contention and objected to the argument as untimely. Accordingly, his new argument could not support the grant of a new trial. *Zalman*, 400 S.W.3d at 594–95; *Cueva*, 339 S.W.3d at 858–59, 879; *see also Cueva*, 354 S.W.3d at 822 (Alcala, J., concurring). Shamim may not complain on appeal that the trial court erred by denying him a new trial on those grounds. *Zalman*, 400 S.W.3d at 594–95; *Cueva*, 339 S.W.3d at 858–59, 879; *see also Cueva*, 354 S.W.3d at 822 (Alcala, J., concurring). To conclude otherwise would

23

lead to an anomalous result, preventing parties from raising new arguments in written amendments to new-trial motions while allowing them to assert new arguments at the hearing on the new-trial motions without notice to the trial court or the State of the new assertions. The appellate rules do not permit such a result.

While we conclude that this is the proper result and the one required by Rule 21 and the *Zalman* and *Cueva* cases, we note that there are other, earlier cases that contain language that could be argued to support an opposite result. *See, e.g.*, *Keeter v. State*, 175 S.W.3d 756, 759–60 (Tex. Crim. App. 2005) (stating that issue is not preserved unless raised "at some point during the motion for new trial proceedings," then concluding that movant failed to raise issue)*; Marines v. State*, 292 S.W.3d 103, 109 n.3 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("Because appellant failed to raise the issue . . . in either his motion for a new trial or during the hearing on that motion, the argument is waived . . . ."); *Roberts v. State*, 749 S.W.2d 624, 625 (Tex. App.—Fort Worth 1988, no pet.) (concluding that movant preserved error based on argument made at new-trial hearing).

In *Roberts*, a defendant presented an argument at the new-trial hearing that was not contained in his written motion. 749 S.W.2d at 625. There is no indication that the State objected to the new argument. Citing former Rule 52(a), the predecessor to Rule 33.1, the court held that, by making the argument at the hearing, appellant had "sufficiently apprised the trial court of the alleged error and

24

gave it the opportunity to rule on the matter which appellant is raising in his sole point of error. Therefore, appellant did not waive his right to appeal on this point." *Id*. (citation omitted). Because the State did not object to the late-added argument in *Roberts*, Rule 21 did not limit that defendant to the arguments contained in his new-trial motion. *See Clarke v. State*, 270 S.W.3d 573, 580–81 (Tex. Crim. App. 2008) (holding that trial court had authority to consider argument made at new-trial hearing because State did not object to newly added argument).

A more recent Fort Worth appellate court case, *Pitman v. State*, contains similar language and cites to *Keeter* without reference to *Cueva*. *See Pitman v. State*, 372 S.W.3d 261, 264 n.2 (Tex. App.—Fort Worth 2012, pet. ref'd). In *Pitman*, the appellate court held that the defendant failed to preserve his claim that the trial court should have granted a new trial based on newly discovered evidence. *Id.* The defendant raised that issue for the first time on appeal of the denial of his motion for new trial. *Id*. The appellate court held that the argument was not preserved because "Appellant did not raise this issue in his new-trial motion or at the new-trial hearing . . . . Because Appellant complains on appeal that the trial court erred by denying his motion for new trial, he must have raised his newly-discovered evidence claim during the new-trial hearing to preserve the complaint for appellate review." *Id*. The *Pitman* case did not include Rule 21 in its analysis or mention or consider the previously-decided *Cueva* case.

While there is language in the *Keeter*, *Marines*, *Roberts*, and *Pitman* cases that could be argued to support Shamim's position that he can raise an issue for the first time at a hearing on a new-trial motion after the 30-day amendment period has expired, the requirements of Rule 21, as interpreted in *Cueva* and, most recently, in *Zalman*, mandate otherwise. TEX. R. APP. P. 21. For the trial court to properly consider a new argument in support of granting a new trial, either the argument has to have been included in a timely-filed motion or amendment or the State must acquiesce to the untimely addition. TEX. R. APP. P. 21.4; *Zalman*, 400 S.W.3d at 594–95; *Cueva*, 339 S.W.3d at 858–59, 879; *see also Cueva*, 354 S.W.3d at 822 (Alcala, J., concurring).

Shamim did not include a conflict-of-interest claim in his new-trial motion. The State objected when he raised that argument at the hearing, after the 30-day amendment deadline. We, therefore, conclude that Rule 21 prohibits Shamim from obtaining a new trial based on a late-added argument to which the State timely objected.

Accordingly, in the context of an appeal of the denial of his new-trial motion, we conclude that Shamim has not preserved the conflict-of-interest issue for appellate review and, therefore, overrule Shamim's third issue.

## Conclusion

Having overruled all three of Shamim's issues, we affirm the trial court's judgment.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Publish.  TEX. R. APP. P. 47.2(b).