**Opinion issued August 12, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00242-CR

_____

**ANTHONY MANUEL HANBY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1583865**

---

## MEMORANDUM OPINION

Appellant, Anthony Manuel Hanby, pled guilty to driving while intoxicated

(DWI), enhanced by prior convictions for intoxication manslaughter and aggravated

assault with a deadly weapon, and the trial court assessed his punishment at 11 years'

confinement. In his sole issue on appeal, Hanby argues that his guilty plea was involuntary because he received ineffective assistance of counsel.

We affirm.

## Background

A deputy with the Harris County Sheriff's Office pulled Hanby over on suspicion of DWI after observing him drive over a traffic cone in a construction zone. Hanby initially agreed to complete field sobriety tests, but he told the officer that he had a disability in his right leg that prevented him from being able to stand or walk well. The officer began the Horizontal Gaze Nystagmus (HGN) test, but Hanby complained that he was distracted by the passing headlights. The officer then detained Hanby and moved him to a new location and performed the HGN test. Hanby demonstrated six clues of intoxication. The officer then arrested Hanby. Hanby refused to submit a breath or blood specimen, so the officer obtained a warrant for a blood test. The toxicology results revealed that Hanby's blood alcohol level was 0.216. He was charged with DWI.

Hanby retained Jon Jaworski to serve as trial counsel. Hanby subsequently waived his right to a jury trial and pled guilty to DWI. In making his plea, he was admonished by the trial court. He affirmed that he voluntarily entered the guilty plea and was satisfied with Jaworski's representation.

The trial court held a sentencing hearing. Hanby submitted the testimony of numerous character references to the trial court, including the testimony of Sheryl Ballard, who had employed Hanby to work around her house. She believed that Hanby was a good citizen, and she stated that he had lived with her since his DWI arrest. She knew that he had attended all his court dates and had cooperated with the court. Hanby also testified, admitting that he had had "three to four" drinks before driving home on the night of his arrest. He also acknowledged that he had an open container of alcohol in the console when he was pulled over and that he did not have a valid driver's license. Hanby recounted the events of the night of his arrest, stating that he was pulled over in an "active construction zone" and that he observed workers "on the other side of the barrier." The trial court assessed his punishment at 11 years' confinement.

Hanby retained new counsel, who filed a motion for new trial, asserting that Hanby's guilty plea was involuntary due to ineffective assistance of his former retained trial counsel. The motion asserted that his counsel was ineffective because he failed to investigate Hanby's traffic stop, arrest, lab results, and other circumstances surrounding his arrest that could have resulted in a successful motion to suppress. The trial court held a hearing at which Jaworski testified regarding the details of his representation of Hanby. Sheryl Ballard also testified at the hearing regarding her understanding of Jaworski's representation and the reasons behind

Hanby's plea of guilty. The trial court denied the motion for new trial, and this appeal followed.

**Ineffective Assistance of Counsel**

In his sole issue, Hanby asserts that he received ineffective assistance of counsel. He asserts that his trial counsel failed to investigate fully the facts and circumstances of his arrest, misinformed him, and waived several motion-to-suppress issues.

**A.      Standard of Review**

Because Hanby asserted his ineffective-assistance-of-counsel claim in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018); *Shamim v. State*, 443 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

A guilty plea must be entered knowingly, intelligently, and voluntarily because it forfeits three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right against self-incrimination. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). To be "voluntary," the plea must be the

4

expression of the defendant's free will and must not be induced by threats, misrepresentations, or improper promises. *Id.* When, as here, the applicant challenges the voluntariness of his plea by contending that his counsel was ineffective, we evaluate whether (1) counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010); *see Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A defendant's sworn representation that his guilty plea is voluntary 'constitute[s] a formidable barrier in any subsequent collateral proceedings.'" *Kniatt*, 206 S.W.3d at 664 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)).

The appellant bears the burden to establish both prongs of the ineffective-assistance claim, and his "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see Lopez*, 343 S.W.3d at 142 ("Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective."). To satisfy the first prong, the appellant must prove that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lopez*, 343 S.W.3d at 142. To prove prejudice—the second

5

prong—the appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

When reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, and we indulge a strong presumption that counsel's performance falls within the range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (noting that appellate review of trial counsel's representation is "highly deferential" and presumes that counsel's actions "fell within the wide range of reasonable and professional assistance"). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" that the claim is meritorious. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Lopez*, 343 S.W.3d at 142–43.

**B.  Analysis**

Hanby argues that his trial counsel was ineffective for failing to make an adequate investigation into potential suppression issues. *See, e.g.*, *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) ("'In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'") (quoting *Wiggins*

6

*v. Smith*, 539 U.S. 510, 521–22 (2003)). Hanby argued in his motion for new trial and on appeal that, among other issues, Jaworski should have sought additional discovery related to the blood draw and testing process and into the employment and disciplinary records of the officer who arrested him.

Jaworski testified that he obtained discovery through the Harris County District Attorney's Office's portal—including the offense report, search warrant, and the results of the blood test—and he reviewed many of the documents with Hanby. He stated that he did not file a request to obtain information regarding the blood sample and testing because the State had already provided the relevant information to him. Jaworski acknowledged that there had been various problems reported with the Harris County crime labs, but he also testified that he did not have any reason to believe such problems had occurred in Hanby's case. He stated, "Every case is different. When we're talking about Mr. Hanby's case, he has lots of other issues besides [the blood test]." Jaworski also explained that he did not request the disciplinary, employment, or training records for the arresting officer, but he knew that the State "would be required to give [him] any information favorable to [Hanby]." Jaworski testified that he would have addressed concerns regarding officer qualifications and the proper testing of the blood during trial on cross-examination, but Hanby pled guilty and never went to trial.

Thus, the record demonstrates that Jaworski conducted some investigation into the case against Hanby. *See Richardson v. State*, 606 S.W.3d 375, 382–83 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (observing that, while "no reasonable trial attorney would wholly fail to investigate the facts of a case," record did not show that counsel was unaware of evidence against appellant, and thus, appellant could not prove ineffective-assistance claim). Hanby has not identified any particular information that further investigation would have revealed. Thus, his allegations that further investigation could have uncovered errors or other grounds for suppressing evidence in his case are purely speculative and do not support a conclusion that Jaworski's investigation was unreasonable under the circumstances. *See Andrus*, 140 S. Ct. at 1881; *Lopez*, 343 S.W.3d at 142–43 (stating that "court must not engage in retrospective speculation" and that "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence"). Hanby has failed to demonstrate that Jaworski's representation in this regard fell outside the range of competence demanded of attorneys in criminal cases. *See Harrington*, 310 S.W.3d at 458.

Hanby also argues that he would not have pled guilty had Jaworski properly informed him that, by pleading guilty, he was forgoing the opportunity to pursue a motion to suppress. We conclude, however, that the record does not affirmatively

8

demonstrate the merit of this claim. *See Menefield*, 363 S.W.3d at 592 (to rebut presumption that counsel's representation was adequate, claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" claim's merit).

Hanby did not testify at the motion-for-new-trial hearing or provide an affidavit supporting the assertions made in his motion for new trial. Ballard testified on his behalf that she and Hanby had met with Jaworski on multiple occasions and that she was present in court when Hanby entered his guilty plea. Ballard stated that Jaworski engaged in only a brief discussion of the plea paperwork and that his explanations to Hanby were unclear. Ballard testified that she believed Hanby wanted to go to trial and pursue a motion to suppress and that he did not realize until after he entered his guilty plea that he could not change his mind.

Jaworski, however, testified that, although Ballard attended several of his meetings with Hanby, she did not attend all of them. He stated that Ballard did not play a significant role in his representation of Hanby and that Hanby himself "made all the decisions." Jaworski stated that he met with Hanby more than ten times and discussed the case with him extensively. He testified that, when Hanby entered his guilty plea, he understood that he was pleading guilty and would then be sentenced by the judge, and he stated that Hanby never expressed to him a desire to go to trial. Jaworski testified that Hanby "vacillated" on whether he wanted to pursue a motion

9

to suppress, and Jaworski "told him to think about it" and take some time to consider his options before entering his plea. Jaworski further testified that, when Hanby entered his plea, Hanby "absolutely" understood that they would not be pursuing a motion to suppress and that, instead, he would move forward with the sentencing proceedings.

On the record during the plea proceedings, Hanby affirmed that he was pleading guilty because he was guilty and that no one was forcing him to plead guilty. Hanby stated that he had the opportunity to go over the plea paperwork with his attorney, the attorney had answered all his questions, and he was satisfied with his attorney's representation. The trial court admonished Hanby that, by pleading guilty, he was giving up his right to go to trial and to confront witnesses, and Hanby affirmed that he still wished to plead guilty. The trial court further informed Hanby that he was not eligible for probation and that the punishment range for the enhanced offense was two to twenty years, and Hanby again affirmed that he wished to plead guilty.

Jaworski also testified that he filed a motion for discovery, a motion to suppress, and a motion in limine in connection with Hanby's case. However, he also testified that he did not obtain rulings on these motions. Regarding the motion to suppress, Jaworski stated that he typically did not pursue pre-trial motions to suppress, preferring to do them "during trial" after double jeopardy had attached. He

also stated that different courts had different preferences regarding when they would hear motions to suppress, and this was something he explained to his clients. In Hanby's specific case, "based on [his] prior record and circumstances," Jaworski did not think "strategy-wise" that a pre-trial motion to suppress was proper.

The trial court was not obligated to credit Ballard's testimony that Hanby did not understand the implications of his guilty plea. The trial court was in the position to consider the credibility of the witnesses, and it was within the court's discretion to credit Hanby's statements at the plea hearing and Jaworski's motion-for-new-trial testimony that Hanby "absolutely" understood that no motion to suppress would be filed when he entered his guilty plea. *See Harrington*, 310 S.W.3d at 457 (where trial court's findings turn on evaluation of witness's credibility and are supported by evidence, we defer to those findings); *Manzi v. State*, 88 S.W.3d 240, 242–44 (Tex. Crim. App. 2002). Hanby failed to establish that Jaworski's performance in this regard fell below an objective standard of reasonableness.[1] *See Strickland*, 466 U.S. at 687–88, 694; *Lopez*, 343 S.W.3d at 142. Thus, Hanby likewise failed to establish

---

[1] Because we have concluded that Hanby failed to establish the first prong of his ineffective-assistance claim, we need not consider his arguments pertaining to the second prong that he had potentially meritorious grounds to assert in a motion to suppress. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("[F]ailure to satisfy one prong of the Strickland test negates a court's need to consider the other prong.").

that the trial court abused its discretion in denying his motion for new trial on this ground. *See Riley*, 378 S.W.3d at 457.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower.

Do not publish.  TEX. R. APP. P. 47.2(b).